**Joe N. BOYD, Plaintiff,**

v.

**SHAWNEE MISSION PUBLIC SCHOOLS, UNIFIED SCHOOL DISTRICT NO. 512, JOHNSON COUNTY, State of Kansas, Defendant.**

Civ. A. No. 78–2080.

United States District Court, D. Kansas.

Sept. 23, 1981.

Bryan E. Nelson of Alder, Nelson & McKenna, Overland Park, Kan., for plaintiff.

John L. Vratil of Bennett, Lytle, Wetzler, Winn & Martin, Prairie Village, Kan., Barton Brown and Sally Williamson of Wallace, Saunders, Austin, Brown & Enochs, Overland Park, Kan., for defendant.

### MEMORANDUM AND ORDER

O'CONNOR, Chief Judge.

This much-delayed case is before the court on defendant's motion to strike punitive damages as a part of plaintiff's claim under Section 1981 and its motion for proper response to plaintiff's answers to defendant's supplemental interrogatories. The supplemental pretrial order filed August 13, 1981, required all pretrial motions to be filed on or before September 1, 1981. Defendant's "Motion for Proper Response ..." was filed September 14, 1981, and is therefore untimely and will be summarily denied.

Defendant's motion to strike punitive damages is based upon the recent Supreme Court case of *City of Newport v. Facts Concerts, Inc.,* —— U.S. ——, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). In that case, the Court held that municipalities are not liable for punitive damages under 42 U.S.C. § 1983. Defendant urges this court to extend the holding of the *City of Newport* case to this action under 42 U.S.C. § 1981 and hold that the school district may not be held liable for punitive damages under that section. Plaintiff contends that the actions under § 1981 and § 1983 are sufficiently distinguishable to preclude applying the *City of Newport* rationale to the case at hand.

The legislative history and judicial treatment of §§ 1981 and 1983 have been discussed by the Supreme Court on numerous occasions. What is now § 1981 was originally enacted along with what is now codified as 42 U.S.C. § 1982 as Section 1 of the Civil Rights Act of 1866. The prohibitions of §§ 1981 and 1982 were within the Congress' power under the Thirteenth Amendment, which is an affirmative declaration that all vestiges of slavery are illegal. Section 1981 guarantees all citizens "the same right, in every State and Territory in the United States, to make and enforce contracts ... as is enjoyed by white citizens." 42 U.S.C. § 1981. Both §§ 1981 and 1982 were re-enacted in Section 18 of the Civil Rights Act of 1870, after ratification of the Fourteenth Amendment. The Supreme Court has held that § 1981 and § 1982 should be construed *in pari materia* in light of their historical inter-relationship. *Tillman v. Wheaton-Haven Recreation Association,* 410 U.S. 431, 440, 93 S.Ct. 1090, 1095, 35 L.Ed.2d 403 (1972). Federal courts may fashion an effective remedy although the statute is framed in declaratory terms. *United States ex rel. Washington v. Chester Co. Police Department,* 300 F.Supp. 1279 (E.D.Pa.1969).

The Supreme Court has held that §§ 1981 and 1982 prohibit racial discrimination whether or not under color of state law. *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1974). In *Jones v. Alfred H. Mayer Co.*, 392 U.S. 409, 88 S.Ct. 2186, 20 L.Ed.2d 1189 (1967), the Court held that § 1982 applied to purely private discrimination in housing, as Congress in Section 1 of the 1866 Civil Rights Act intended "to prohibit all racial discrimination, private and public, in the sale and rental of property." *Jones, supra*, at 437, 88 S.Ct. at 2202. The Court further held that under the Thirteenth Amendment, Congress had the power to determine what the badges and incidents of slavery were, and to effect that determination in legislation.

In *Runyon v. McCrary*, 427 U.S. 160, 170, 96 S.Ct. 2586, 2594, 49 L.Ed.2d 415 (1975), the Court discussed § 1981 and its application to private schools which excluded qualified children because they were Negroes. In *Runyon*, the Court reasoned that because § 1981 and § 1982 derived from the same source, *i. e.* Section 1 of the 1866 Act, that the holding in *Jones* necessarily implied that § 1981 would also reach purely private acts of racial discrimination. The Court in *Runyon* reaffirmed its holding in *Jones* and applied the *Jones* interpretation of the legislative history of Section 1 of the Civil Rights Act of 1866 to § 1982 actions: "The [1866] Act was designed to do just what its terms suggest: to prohibit all racial discrimination, whether or not under color of law, with respect to the rights enumerated therein—including the right to purchase or lease property." *Jones, supra*, at 436, 88 S.Ct. at 2201.

Given the broad sweep of § 1981, federal courts have applied its provisions to a variety of defendants, including municipalities. See *Sethy v. Alameda County Water District*, 545 F.2d 1157, 1161 (9th Cir. 1976); *Robinson v. Conlisk*, 385 F.Supp. 529, 535 (N.D.Ill.1974); *United States ex rel. Washington v. Chester County Police Department*, 294 F.Supp. 1157 (E.D.Pa.1969); *Resident Advisory Board v. Rizzo*, 564 F.2d 126, 140 (3rd Cir. 1977), *cert. denied* 435 U.S.

908, 98 S.Ct. 1457, 55 L.Ed.2d 499; *Milburn v. Girard*, 441 F.Supp. 184 (E.D.Pa.1977); *Maybanks v. Ingraham*, 378 F.Supp. 913 (E.D.Pa.1974); *Hines v. D'Artois*, 383 F.Supp. 184 (W.D.La.1974), *reversed on other grounds* 531 F.2d 726 (5th Cir.).

Section 1981 has also been applied to school boards. *Kelly v. West Baton Rouge Parish School Board*, 517 F.2d 194, 197 (5th Cir. 1975); *Balmes v. Board of Education of Cleveland City School District*, 436 F.Supp. 129, 133 (N.D.Ohio 1977). In *Balms, supra*, the court refused to entertain plaintiff's action against the defendant school board on the basis of § 1983, but did allow plaintiff to proceed against the school board pursuant to § 1981.

■ Unlike the broad language of § 1981, § 1983 states that "any person who, under color of any law, statute, ordinance, regulation, custom, or usage of any state, shall subject, or cause to be subjected, any person ... to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, ..., be liable to the party injured in any action at law, ..." Section 1983 was enacted as part of the Civil Rights Act of 1871, following ratification of the Fourteenth Amendment. A separate legislative history exists for § 1983, being based solely on the power given to Congress in the Fourteenth Amendment. Section 1983 does not touch purely private action, and much of the focus in § 1983 cases has been on the meaning of the word "person."

In 1961, the Supreme Court held that municipalities were not "persons" subject to liability under § 1983. *Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). This was so even though the Court had entertained over a score of cases brought under § 1983 in which the principal defendant was a school board. *Monell v. New York City Department of Social Services*, 436 U.S. 658, 663, 98 S.Ct. 2018, 2021, 56 L.Ed.2d 611 (1977). In *Monell*, the Supreme Court reversed its prior holding in *Monroe v. Pape*, and held that municipalities would be considered "persons" in determining

§ 1983 liability. The Court admitted in *Monell* that holding school boards liable in § 1983 actions was inconsistent with municipal immunity under *Monroe v. Pape*. The Court found that there was no reason to distinguish between municipalities and school boards, each of which is an instrumentality of state administration. *Monell, supra*, 436 U.S. at 696, 98 S.Ct. at 2038.

*Monell* would seem to support defendant's contention that municipalities and school boards should be treated similarly in civil rights actions with respect to the scope of their liability. However, the defendant has cited no authority for the proposition that liability under § 1981 and § 1983 is identical.

In reaching its decision in *City of Newport* that municipalities are immune from punitive damages, the Supreme Court did not discuss § 1981, but relied to a great extent on the legislative history of § 1983. The Court emphasized that in order to incorporate a particular immunity defense into § 1983, careful inquiry must be made into considerations of both history *and* policy. *See Owen v. City of Independence*, 445 U.S. 622, 638, 657, 100 S.Ct. 1398, 1409, 1418, 63 L.Ed.2d 673 (1980) (city may not assert good-faith immunity). The Civil Rights Act of 1871, of which § 1983 was a part, created a federal remedy against a person who, acting under color of state law, deprives another of constitutional rights. During its consideration of this measure, Congress specifically rejected the Sherman amendment that would have explicitly made municipalities liable for violations. The Court in *City of Newport* found that Congress did not have any intention of doing away with the common law immunities afforded municipalities. The Court noted that traditionally, immunity from punitive damages extended to municipalities. The Court further observed that "judicial disinclination to award punitive damages against a municipality has persisted to the present day in the vast majority of jurisdictions." *Newport, supra*, —— U.S. at ——, 101 S.Ct. at 2756.

After concluding that there was *no evidence of congressional intent to alter the settled common law immunity* of municipalities from punitive damages, the Court discussed the policy considerations in awarding punitive damages against a city. Punitive damages are designed to punish the tort feasor, and not to compensate injured parties. A punitive damage award against a municipality would likely be accompanied by an increase in taxes or reduction in services for the citizens who would be actually paying the award. The city could not have any malice independent of the malice of its officials, and therefore the awarding of punitive damages would not deter wrongdoing or punish the tort feasor.

> In sum, we find that considerations of history and policy do not support exposing a municipality to punitive damages for the bad faith actions of its officials. Because absolute immunity from such damages obtained at common law and was undisturbed by the 42nd Congress, and because that immunity is compatible with both the purposes of § 1983 and general principles of public policy, we hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983. *Newport, supra*, —— U.S. at ——, 101 S.Ct. 2762.

The Court in *City of Newport* made no reference to liability under § 1981, which was enacted at a different time and under different constitutional authority for a different purpose. Federal courts have traditionally treated the two statutes as totally distinct and as independent causes of action. In *Sethy v. Alameda County Water District*, 545 F.2d 1157 (9th Cir. 1976), the court discussed municipal immunity under § 1983 as it still existed at that time under *Monroe v. Pape*. The water district had argued that the action taken by Congress in 1871 in rejecting the Sherman amendment providing specific liability for a municipality in § 1983 actions implied that no municipal liability should be imposed under § 1981. The court rejected this argument and stated:

> There is likewise no "positive repugnancy" between the Act of 1866 and the

Act of 1871 that would force a conclusion that passage of the latter impliedly repealed the former. See *United States v. Borden Co.*, 308 U.S. 188, 198–99, 60 S.Ct. 182 [188] 84 L.Ed. 181 (1939). Not only do the two laws fail to create a total subject-matter overlap, but the rejection of municipal liability in the Act of 1871 is not inconsistent with its imposition under the Civil Rights Act of 1866.

A proper reading of § 1981 today, in light of *Sullivan v. Little Hunting Park, Inc.*, 396 U.S. 229, 239, 90 S.Ct. 400 [405] 24 L.Ed.2d 386 (1969), implies the existence of all necessary and appropriate remedies, including the remedy of damages against a municipal corporation in the case of the kind presently before us. *Sethy, supra*, at 1161.

■ In *Kelly v. West Baton Rouge Parish School Board*, 517 F.2d 194 (5th Cir. 1975), the Fifth Circuit held that notwithstanding the immunity that the school board might obtain under § 1983, the board was not immune from a claim based on § 1981. *Id.* at 197. Other courts during the municipal immunity era bestowed by *Monroe* in § 1983 actions held that municipalities were nonetheless subject to suit under § 1981. *United States ex rel. Washington v. Chester Co. Police Department, supra; Resident Advisory Board v. Rizzo, supra.*

> In plain and unambiguous terms, § 1981 grants to all persons the same right to make and enforce contracts and to the full and equal benefit of all law. Section 1981 prohibits all discrimination, whether it be by individual, municipalities or police review boards. I cannot ignore the legislative history and the broad language of § 1981. Section 1981 means what it says: all discrimination is prohibited, regardless of whether the source of the discrimination is a municipal corporation.
>
> *Robinson v. Conlisk*, 385 F.Supp. 529 (N.D.Ill.1974).

See, also, *Balmes v. Board of Education of Cleveland City School District*, 436 F.Supp. 129 (N.D.Ohio 1977).

The Supreme Court discussed punitive damages as being part of the relief available on claims under § 1981 in *Johnson v. Railway Express Agency*, 421 U.S. 454, 459–60, 95 S.Ct. 1716, 1719–20, 44 L.Ed.2d 295 (1974):

> Title 42 U.S.C. § 1981, being the present codification of § 16 of the century-old Civil Rights Act of 1870, 16 Stat. 144, on the other hand, on its face relates primarily to racial discrimination in the making and enforcement of contracts. Although this Court has not specifically so held, it is well settled among Federal Courts of Appeals [n]—and we now join them—that § 1981 affords a federal remedy against discrimination in private employment on the basis of race. An individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including compensatory and, under certain circumstances, punitive damages.

The historical analysis and consideration of competing social policies relied on by the Court in its § 1983 cases are not found in the § 1981 area. The same preservation of traditional municipal immunity found by the *City of Newport* Court in the deliberations of the 42nd Congress with regard to § 1983 cannot be imputed to the legislators enacting § 1981. The entire thrust of the Thirteenth Amendment and § 1981 is total eradication of the badges and incidents of slavery, both public and private. *Johnson v. Railway Express Agency* specifically recognizes that punitive damages are recoverable under appropriate circumstances in § 1981 actions, and we are reluctant to carve out an immunity that the Supreme Court in no way suggests should apply.

■ Defendant has cited no authority for the proposition that liabilities under §§ 1981 and 1983 are coextensive or that immunity granted to a particular class of defendants under one statute affects immunity under the other. Justice Powell in his concurring opinion in *Runyon v. McCrary*, 427 U.S. 160, 186, 96 S.Ct. 2586, 2602, 49 L.Ed.2d 415 (1975), stated, "I consider the posture of §§ 1981 and 1982 in the jurisprudence of this Court to be quite different from that of § 1983."

Based upon the disparate treatment historically given municipalities under §§ 1981 and 1983, the different goals and purposes reflected in the legislative histories of the two statutes, and the different constitutional bases for the two acts, this court is not prepared to extend the holding of *City of Newport* to the case now before us. Defendant's motion to strike will therefore be denied.

IT IS THEREFORE ORDERED that defendant's motion to strike punitive damages as a part of plaintiff's claim under § 1981 be and hereby is denied, and defendant's motion to compel proper response be and hereby is also denied.