Harvey L. FERGUSON, Plaintiff,

v.

JOLIET MASS TRANSIT DISTRICT and Edward A. Lawson, Defendants.

No. 80 C 3631.

United States District Court,
N. D. Illinois, E. D.

Nov. 17, 1981.

---

**2.** No liability can attach to Kuhn's aiding, abetting, or advising actions that are not illegal in themselves.

Aldus S. Mitchell, Chicago, Ill., for plaintiff.

Michael Gahan, Joliet, Ill., for defendants.

---

## MEMORANDUM OPINION

WILL, District Judge.

In the plaintiff's second amended complaint, he alleges that the conditions of his employment by the Joliet Mass Transit District and the termination of that employment were racially discriminatory in violation of Title VII and 42 U.S.C. § 1981. As part of the relief for the alleged violation of section 1981, the plaintiff requests an award of punitive damages. The defendant Joliet Mass Transit District, in a motion to strike that request, argues that punitive damages cannot be awarded under section 1981 against a municipal corporation. For the reasons hereinafter stated, the defendant's motion is granted.

### I.

The Supreme Court held recently that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *County of Newport v. Fact Concerts, Inc.,* —— U.S. ——, ——, 101 S.Ct. 2748, 2762, 69 L.Ed.2d 616 (1981). In reaching that decision, the Court first determined whether the immunity claimed by the defendant in that case was well established at common law at the time the statute was enacted. *Id.* at 2755–58. Finding that it was, the Court next examined the legislative history of section 1983 for evidence of congressional intent to abolish that immunity in suits under section 1983. *Id.* at 2758–59. Finding none, the Court considered the compatibility of the immunity with the purposes of the statute and with public policy. *Id.* at 2759–62. A similar analysis of "both history and policy," *id.* at 2755, is appropriate in construing section 1981.

### A.

Since section 1981 was enacted only five years before section 1983 became law, the analysis of section 1981 begins in this case at the same point the analysis of section 1983 began in *City of Newport*: municipal immunity from punitive damages was well established at common law when the statute was passed. *See id.* at 2756–58. The first relevant factor, therefore, supports a holding that a municipal corporation is immune from damages under section 1981 as well as under section 1983.

Although the plaintiff is correct that the legislative history of section 1983 which was cited in *City of Newport* is irrelevant to an analysis of section 1981, when the plaintiff also argues that that fact justifies a construction of section 1981 which is different from the Supreme Court's construction of section 1983, he misconceives the role of legislative history in the analysis in *City of Newport*. While the Court did note that "the limited legislative history relevant to [the issue of punitive damages against municipalities] suggests" that in enacting section 1983 Congress did not intend to abolish municipal common law immunity from punitive damages, *id.* at 2759, the Court's decision to maintain that immunity in suits under section 1983 was not based on the presence of such evidence in the legislative history but on the absence of any evidence that Congress intended to abolish the immunity.

The plaintiff has not cited any evidence that Congress intended to allow an award of punitive damages against municipal corporations under section 1981, while retaining the immunity under section 1983, nor has our examination of the legislative history revealed any such intent. When an immunity is well established in the common law, the courts presume that, in enacting a statute, " 'Congress would have specifically so provided had it wished to abolish the doctrine.' " *Id.* at 2758, *quoting Pierson v. Ray,* 386 U.S. 547, 555, 87 S.Ct. 1213, 1218, 18 L.Ed.2d 288 (1967). In light of that presumption, therefore, the silence of Congress and the neutrality of the legislative

history of section 1981 on this issue support a conclusion that the immunity of municipal corporations from punitive damages extends to suits under section 1981.

## B.

The plaintiff's argument that municipal immunity from punitive damages is contrary to the goals of section 1981 exaggerates both the scope of that statute and the efficacy of an award of punitive damages. In what is apparently the only other case to decide this issue, *Boyd v. Shawnee Mission Public Schools*, 522 F.Supp. 1115 (D.Kan. 1981), the court held that punitive damages were available against a municipality in a suit under section 1981 because section 1981, unlike section 1983, was enacted pursuant to the thirteenth amendment and had as its goal the total eradication of the badges and incidents of slavery. Those considerations, however, do not necessarily require different constructions of the two statutes. For example, although noting that section 1983 was enacted pursuant to the thirteenth amendment, many courts have held that in section 1981 suits as well as section 1983 suits, the plaintiff must prove discriminatory intent because of the close relationship between section 1981 and the fourteenth amendment. *See, e.g., Golden v. Local 55 of the International Association of Firefighters*, 633 F.2d 817 (9th Cir. 1980); *Craig v. County of Los Angeles*, 626 F.2d 659 (9th Cir. 1980), *cert. denied*, 450 U.S. 919, 101 S.Ct. 1364, 67 L.Ed.2d 345 (1981); *Mescall v. Burrus*, 603 F.2d 1266 (7th Cir. 1979); *Grigsby v. North Mississippi Medical Center, Inc.*, 586 F.2d 457 (5th Cir. 1978). The cases which hold that neither section 1981 nor section 1983 prohibit unintentional discrimination establish that the different goals and constitutional bases for the two statutes do not necessarily mean that section 1981 must be interpreted more broadly than section 1983.

■ Furthermore, allowing punitive damages against municipal corporations would not significantly advance the purposes of section 1981 beyond what is already accomplished by allowing awards of compensatory damages against a municipality and awards of compensatory and punitive damages against defendant officials. Punitive damages are awarded to deter a tortfeasor and others from similar conduct and to punish a tortfeasor who acted maliciously. In *City of Newport*, the Supreme Court rejected the argument that the threat of punitive damages would deter a municipal corporation from future constitutional violations for several reasons. First, it noted that municipal officials, including those at the policymaking level, would probably not be deterred from wrongdoing by the possibility that large punitive damages awards might be assessed against the municipality. 101 S.Ct. at 2760. Second, according to the Court, offending public officials were as likely to be removed from office out of concern for public funds generated by an award of compensatory damages and for the government's integrity than as a reaction to a punitive damage award. *Id.* at 2761. Third, an award of punitive damages against the offending official is a more direct and effective deterrent than an award against the municipal employer. *Id.*

The Court in *City of Newport* also held that the retribution objective of punitive damage awards does not justify such an award against a municipality.

> Under ordinary principles of retribution, it is the wrongdoer himself who is made to suffer for his unlawful conduct. If a government official acts knowingly and maliciously to deprive others of their civil rights, he may become the appropriate object of the community's vindictive sentiments .... A municipality, however, can have no malice independent of the malice of its officials. Damages awarded for *punitive* purposes, therefore, are not sensibly assessed against the government entity itself.

*Id.* at 2760. Moreover, "punitive damages imposed on a municipality ... are likely accompanied by an increase in taxes or a reduction of public services for the citizens footing the bill. Neither reason nor justice suggests that such retribution should be

visited upon the shoulders of blameless or unknowing taxpayers." *Id.* According to the Court, what small increase in accomplishing the goals of the statute might be gained by awarding punitive damages against a municipal corporation is outweighed by the serious risk to the financial integrity of municipal corporations inherent in the burden of exposure for the malicious conduct of individual government employees. *Id.* at 2761. The Court explained,

> [b]ecause evidence of a tortfeasor's wealth is traditionally admissible as a measure of the amount of punitive damages that should be awarded, the unlimited taxing power of a municipality may have a prejudicial impact on the jury, in effect encouraging it to impose a sizable award. The impact of such a windfall recovery is likely to be both unpredictable and, at times, substantial, and we are sensitive to the possible strain on local treasuries and therefore on services available to the public at large. Absent a compelling reason for approving such an award, not present here, we deem it unwise to inflict the risk.

*Id.* at 2761–62. Since the objectives underlying punitive damages and the applicable principles of public policy are the same whether an award of punitive damages is being considered under section 1981 or section 1983, the rationale of the Supreme Court in *City of Newport* that municipal immunity from punitive damages is compatible with the purposes of section 1983 compels the same conclusion with regard to section 1981.

## II.

The plaintiff's attempts to justify an exception to municipal immunity from punitive damages based on the nature of the defendant mass transit district and its functions are unpersuasive. The plaintiff argues that the concern for taxpayers which prompted, in part, the Supreme Court's decision in *City of Newport* is not implicated here because no general taxing authority is involved. That claim ignores the financial status of public transportation. The defendant district receives financial support from a sales tax levied in the area in which it operates and from state funds. The plaintiff's theory that, if the defendant must pay large punitive damages awards in a section 1981 suit, the public, which is innocent of any malice, will not be significantly affected by resulting service curtailments or higher taxes is unrealistic and unsupported by fact or reason.

The plaintiff's argument that the defendant district is not a municipal corporation as the term was used when section 1981 was enacted is also unavailing. Since municipal immunity stems from state sovereign immunity, the State of Illinois, in creating the defendant and in defining defendant as a municipal corporation, Ill.Rev.Stat., ch. 111⅔, § 353, endowed the defendant with the same immunities as every other municipal corporation.

The plaintiff also argues that punitive damages should be available against a municipal corporation in a section 1981 suit where the defendant is performing a proprietary rather than a governmental function. The operation of a public utility such as the mass transportation system involved in this case is regarded as a proprietary function. *See* James, F., *Tort Liability of Governmental Units and Their Officers*, 22 U.Chi.L.Rev. 610, 627 (1955); *City of Albuquerque v. New Mexico State Corporation Commission*, 93 N.M. 719, 605 P.2d 227 (1980). In *Owen v. City of Independence*, 445 U.S. 622, 100 S.Ct. 1398, 63 L.Ed.2d 673 (1980), while discussing the history of municipal immunity, the Supreme Court explained the distinction.

> On the one hand, the municipality was a corporate body, capable of performing the same "proprietary" functions as any private corporation, and liable for its torts in the same manner and to the same extent as well. On the other hand, the municipality was an arm of the State, when acting in the "governmental" or "public" capacity, it shared the immunity traditionally accorded the sovereign.

445 U.S. at 644–45, 100 S.Ct. at 1412.

Although that historical difference may superficially appear to support the distinc-

tion suggested by the plaintiff, we conclude that immunity from punitive damages as distinguished from sovereign immunity as to all damages should apply regardless of the particular function of the municipal corporation which is involved in the suit. The policy bases of the decision in *City of Newport* with respect to immunity from punitive damages and our decision with regard to section 1981 apply to the same extent whether the municipality is performing a proprietary or a governmental function. Furthermore, the statement in *Owen* that municipal corporations performing proprietary functions have historically been held responsible "to the same extent as a private corporation under like circumstances," 445 U.S. at 645 n. 27, 100 S.Ct. at 1412, is inaccurate insofar as it implies that municipal corporations have been held liable for punitive damages if they are performing a proprietary function. Contrary to that implication, many courts have held that punitive damages were not available against a municipal corporation even when the municipality was performing a proprietary function. *See, e.g., City Council of Montgomery v. Gilmer & Taylor*, 33 Ala. 116 (1858); *City of Chicago v. Langlass*, 52 Ill. 256 (1869); *Wilson v. Wheeling*, 19 W.Va. 323 (1882); *Bennett v. Marion*, 102 Iowa 425, 71 N.W. 360 (1897); *Willett v. Village of St. Albans*, 69 Vt. 330, 38 A. 72 (1897); *Town of Newton v. Wilson*, 128 Miss. 726, 91 So. 419 (1922); *Ranells v. City of Cleveland*, 41 Ohio St.2d 1, 321 N.E.2d 885 (1975); *Costich v. City of Rochester*, 68 A.D. 623, 73 N.Y.S. 835 (1902); *Chappell v. City of Springfield*, 423 S.W.2d 810 (Mo.1968). The Supreme Court relied on those cases in *City of Newport*, 101 S.Ct. at 1256 and 1256 n. 21, and that reliance implies that the function of the municipal corporation is irrelevant to the question of punitive damages and indicates that the historical basis for the decision that punitive damages cannot be recovered against a municipality is the same regardless of whether the municipality is performing a proprietary or a governmental function. We hold therefore, that the defendant Joliet Mass Transit District cannot be held liable under section 1981 for punitive damages.

III.

For the reasons stated above, we grant the defendant's motion to strike paragraph d of count II of the plaintiff's second amended complaint insofar as it relates to the Joliet Mass Transit District. An appropriate order will enter.