**Rev. Timothy A. HOLLY, Plaintiff,**

v.

**CITY OF NAPERVILLE, et al., Defendants.**

**No. 82 C 6981.**

United States District Court, N.D. Illinois, E.D.

July 8, 1983.

Timothy A. Holly, pro se.

Marvin Glink, Peter D. Coblentz, John B. Murphey, Ancel, Glink, Diamond, Murphy & Cope, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is an age, race and handicap discrimination action brought under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, the Age Discrimination in Employment Act, 29 U.S.C. § 621 *et seq.*, the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, and the Civil War statutes, 42 U.S.C. §§ 1981 and 1983. Defendants have brought a motion to dismiss parts of the complaint. We grant that motion in part and deny it in part.

## FACTS

■ On a motion to dismiss, we accept the facts as stated in plaintiff's complaint. We summarize the facts relevant to this motion.

Plaintiff is a black person and is blind in one eye. At the time his complaint was filed, he was 50 years of age. Plaintiff was an employee of the City of Naperville, Illinois (the "City") from July 1978 to August 8, 1981, when he was discharged. Plaintiff alleges that although he was a competent employee, he was the target of racial slurs by one or more of the defendants who questioned his abilities and intelligence as a black person in a management position. He alleges that the City had a clear preference for hiring younger, less experienced, non-handicapped white people for data processing and management positions. At the time of his discharge, according to plaintiff, the City employed no other black managers and only four of the City's 400 employees were black. Plaintiff alleges that he was replaced by a young, less-experienced, non-handicapped white male.

Plaintiff also alleges that his discharge was in violation of the City personnel code, which provided that disciplined employees must be notified of the cause for their discipline, notified that they may appeal the actions to a personnel review board, and must first be suspended before being terminated. According to the complaint, the City did not follow any of these procedures in terminating plaintiff but rather told him only that "recent events" demonstrated his "less than satisfactory" management. Further, plaintiff alleges that his request for an explanation was denied and that he was denied the opportunity to appeal his termination to the personnel review board.

Finally, plaintiff alleges that "much after" his discharge, defendants sent to the Equal Employment Opportunity Commission, and to an attorney plaintiff was trying to retain, a letter which raised "false, spurious, suspect and professionally damaging statements about plaintiff's job performance." Plaintiff alleges that these statements were made pretextually in an effort

to justify his termination. The letter alleged falsely imputed sexual misconduct to plaintiff. Plaintiff also alleges, in a separate count, that the City later made several defamatory, false and misleading statements with reckless disregard for the truth, which constituted the foundation of several newspaper articles regarding plaintiff's discharge. According to plaintiff, the letter and the latter statements damaged his reputation both personally and professionally.

Plaintiff has sued not only the City but also the Mayor, the City Council members, the City Manager, the Finance Officer and the Personnel Officer. Plaintiff alleges that his unlawful discharge and the violation of the City personnel code were known to each defendant but that none of them took any action to mitigate or correct plaintiff's injuries. According to the complaint, each defendant intentionally and maliciously refused to perform his or her lawful duties, including direction, supervision, control or other acts. Plaintiff alleges that the defendants' acquiescence in plaintiff's unlawful discharge shows that the discharge was part of the City's customs and policies.

Plaintiff requests a declaratory judgment that the City's actions violated his statutory and constitutional rights; an order requiring the United States Treasury Department to cut off federal revenue sharing funds to the City until a hearing is held by the Secretary of the Treasury; reinstatement to his position with the City; back pay and compensatory damages; liquidated damages arising out of the age discrimination claim; punitive damages; and fees and costs.

## DISCUSSION

Defendants' motion to dismiss attacks only certain parts of the complaint. We consider the grounds in turn.

### 1. Failure to Bring Administrative Charge

■ Defendants argue that plaintiff's age discrimination claim must be dismissed because plaintiff failed to file an administrative claim prior to bringing suit as required by the Age Discrimination in Employment Act. See 29 U.S.C. § 626(d). Such a claim must be filed within 180 days after the alleged unlawful employment practice occurred (or within 300 days in states with parallel administrative mechanisms for addressing age discrimination). Id. The requirement that the administrative claim be filed within the prescribed time limits is not jurisdictional in a strict sense; the time limits may be tolled on certain equitable grounds. Kephart v. Institute of Gas Technology, 581 F.2d 1287 (7th Cir.1978), cert. denied, 450 U.S. 959, 101 S.Ct. 1418, 67 L.Ed.2d 383 (1981).

■ Plaintiff concedes that the administrative claim form he filed with the EEOC did not specifically mention age discrimination. However, in his brief, he offers two arguments to counter defendant's position. First, plaintiff argues that he told the EEOC enforcement officers about the age discrimination claim but that the officers simply did not include the claim on his form. According to plaintiff the age discrimination claim was fully a part of the EEOC investigation and conciliation efforts and therefore plaintiff has accomplished all that would have been accomplished by listing age discrimination on his form. Second, plaintiff argues that he was not given notice of his rights under the Age Discrimination in Employment Act, as required by the Act. See 29 U.S.C. § 627. If a defendant has not met this notice requirement, a plaintiff's 180-day period for filing a claim under the Act is tolled until such time as the plaintiff either retains an attorney or acquires actual knowledge of his or her rights under the Act. Kephart, supra.

First, we reject plaintiff's second argument. Even if the City did not give plaintiff notice of his rights, plaintiff obviously had actual knowledge of his rights on November 15, 1982, when his complaint alleging age discrimination was filed in this court. Since plaintiff has apparently not filed any administrative charges since that date, which is more than 180 days ago, the applicable time period, even if tolled until November 15, 1982, has already run.

■ Plaintiff's first argument, though, has merit. Plaintiff has filed a supplemen-

tary exhibit to his response brief which includes what purports to be the intake questionnaire of the EEOC officer with whom plaintiff discussed his case. The officer's notes indicate plaintiff told the officer that, in addition to race, plaintiff believed he was fired because he was "above 45 years of age." If, as this exhibit indicates, plaintiff orally put the EEOC on notice of the alleged age discrimination, we would have jurisdiction to hear the age claim even though it was not formally listed on plaintiff's written EEOC charge. *Cf. Larsen v. Jewel Companies, Inc.,* No. 81 C 4361, mem. op. at 6, n. 1 (N.D.Ill. March 10, 1983) (Grady, J.). *Cf. Clark v. Chrysler Corporation,* 673 F.2d 921, 931 (7th Cir.), *cert. denied,* —— U.S. ——, 103 S.Ct. 161, 74 L.Ed.2d 134 (1982) (original charge of race discrimination could not be used as the basis of a subsequent lawsuit alleging sex discrimination, where the allegations of sex discrimination were not within the parameters of the EEOC's investigation of the charge). As plaintiff points out, where a charge in a Title VII case has been amplified so as to put the EEOC on notice of additional grounds, the amplification is deemed to relate back to the original charge. 29 C.F.R. § 1601.12.

■ Defendants cite *Kephart, supra,* for the proposition that plaintiff must plead in his complaint, rather than argue in his memorandum, that the EEOC investigation encompassed more bases than did his original charge. However, *Kephart* does not so hold. *Kephart* does hold that a plaintiff must allege sufficient facts in his complaint to establish an equitable basis for *tolling* the time limitations of § 626(d). However, plaintiff's first argument, unlike his second one, is not that the 180-day period should be tolled on equitable grounds but that he met the 180-day deadline in the first place only to find later that his written charge did not list all of the grounds he stated to the EEOC officer during the intake interview.

■ Plaintiff has pled in his complaint that he filed charges with the EEOC based on race, age, and otherwise-qualified handicap. ¶ 10. In his exhibit, plaintiff has introduced evidence which could support the conclusion that he did indeed tell the EEOC officer about the alleged age discrimination. This is more than enough to survive a motion to dismiss. Accordingly, we deny defendants' first ground.

*2. Failure to Name Individual Defendants in EEOC Charge*

Defendants next argue that the individual defendants should be dismissed because they were not named in plaintiffs' EEOC charge. The parties, in briefing this issue, have focused on whether these individual defendants are "substantially identical" to the parties named in the EEOC charge so as to allow suit to proceed against the individual defendants. The parties have discussed two district court opinions, *Wright v. Methodist Youth Services, Inc.,* 511 F.Supp. 307 (N.D.Ill.1981), and *Goodman v. Board of Trustees of Community College District 524,* 498 F.Supp. 1329 (N.D.Ill.1980). While those cases did enunciate a "substantially identical" test, a more recent decision of the Seventh Circuit adopted a four-prong test. *Eggleston v. Chicago Journeymen Plumbers' Local Union No. 130, U.A.,* 657 F.2d 890, 904–08 (7th Cir.1981), *cert. denied,* 455 U.S. 1017, 102 S.Ct. 1710, 72 L.Ed.2d 134 (1982). We have decided to reserve judgment on this issue pending briefing by the parties as to how this case fits within the four-pronged *Eggleston* test. Defendants are given 15 days from the date of this order to file, if they wish, a memorandum on this point. If defendants do so, plaintiffs shall have 15 days to respond, after which defendants shall have an additional 15 days to reply.

*3. Compensatory and Punitive Damages Under Title VII and the Rehabilitation Act of 1973*

Defendants seek to strike any prayer for compensatory and punitive damages under Title VII or the Rehabilitation Act of 1973. Plaintiff has responded in his brief that he is not seeking such damages under those statutes. Accordingly, to the extent the complaint could be read to seek such dam-

ages under those statutes, defendants' motion is granted.

### 4. Federal Revenue Sharing Funds

■ Defendants seek to dismiss the complaint to the extent it asks for injunctive relief to prevent federal officials from issuing federal revenue sharing funds to the City. We grant this portion of defendants' motion for the simple reason that the federal officials sought to be enjoined are not parties to this suit.

### 5. Punitive Damages Under §§ 1981 and 1983

#### (a) Section 1983

■ Defendants correctly point out that punitive damages are not available under § 1983 against the City or against the City officials sued in their official capacities. *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981). However, such damages could be available against the City officials sued in their individual capacities if the officials' conduct involved reckless or callous indifference to the plaintiff's federally protected rights or if the conduct was motivated by evil motive or intent. *Smith v. Wade,* —— U.S. ——, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983).

■ Plaintiff has not specified in his complaint whether he is suing the City officials in their official or individual capacities or both. He does allege that the officials' conduct was taken pursuant to official City law, practices, policies and customs, which indicates that the defendants are sued at least in their official capacities. However, plaintiff is entitled to sue the City officials in either or both capacities in order to establish alternate sources of funds for any relief which may eventually be granted. *Nekolny v. Painter,* 653 F.2d 1164, 1170 (7th Cir.1981), *cert. denied,* 455 U.S. 1021, 102 S.Ct. 1719, 72 L.Ed.2d 139 (1982); *Heatherly-Kelo v. DuPage Library System,* No. 82 C 5278, mem. op. at 15 (N.D.Ill. June 23, 1983) (Grady, J.).

We grant the motion to dismiss the punitive damages claim under § 1983 against the City and against the individual defendants to the extent the individual defendants are sued in their official capacities. If plaintiff intends to sue the City officials in their individual capacities, he should amend his complaint to reflect this. Otherwise, we will assume that they are sued only in their official capacities.

#### (b) § 1981

Although defendants claim that "the law is settled" that punitive damages are not available against a municipality under § 1981, courts have actually taken different approaches to this question. Neither the Seventh Circuit nor the Supreme Court has addressed · the issue. Most recently, the Ninth Circuit left the question open, *see White v. Washington Public Power Supply System,* 692 F.2d 1286, 1290 (9th Cir.1982).

The First Circuit has agreed with defendants here that punitive damages are not available against a municipality under § 1981, *see Heritage Homes of Attleboro, Inc. v. Seekonk Water District,* 670 F.2d 1 (1st Cir.), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (1982), as has Judge Will of our district, *see Ferguson v. Joliet Mass Transit District,* 526 F.Supp. 222 (N.D.Ill.1981), and Judge Reynolds of the Eastern District of Wisconsin, *see Bell v. City of Milwaukee,* 536 F.Supp. 462 (E.D. Wis.1982). However, Judge O'Connor of the Kansas District Court has held that such damages are available, *see Boyd v. Shawnee Mission Public Schools, Unified School District No. 512, Johnson County,* 522 F.Supp. 1115 (D.Kan.1981).

The courts' varying approaches have centered on whether each court thought the policies enunciated in *City of Newport v. Fact Concerts, Inc., supra* (where the Supreme Court held that punitive damages were not available against a municipality under § 1983), applied to actions against a municipality under § 1981. The *Heritage Homes, Ferguson,* and *Bell* courts, in similar analyses, found no legislative history to indicate that Congress, in enacting § 1981, intended to override the immunity from punitive damages which municipalities had enjoyed at common law. Since the Su-

preme Court had relied in *Fact Concerts* on the absence of legislative history to indicate that Congress, in enacting § 1983, had not intended to abrogate the common law municipal immunity from punitive damages, the *Heritage Homes, Ferguson* and *Bell* courts held that municipalities were similarly immune from punitive damages under § 1981. These courts also noted, following the Supreme Court's § 1983 analysis in *Fact Concerts,* that the purposes of § 1981 would not be served by allowing punitive damages against a municipality. Punitive damages are assessed to deter future wrongdoing, yet municipal officials would probably not be deterred from wrongdoing by the possibility that large damage awards might be assessed against the municipality. An award of punitive damages against the wrongdoers themselves is a more direct and efficient deterrent, these courts reasoned.

In contrast, the *Boyd* court reasoned that § 1981 and § 1983 were sufficiently different that no analogy could be drawn between the two. First, § 1981's reach is much broader than § 1983's. Section 1981 applies to all race discrimination, while § 1983 applies only to constitutional deprivations carried out under color of law. The two sections enacted five years apart, have entirely separate legislative histories, and were enacted pursuant to Congress' power under separate constitutional amendments. According to the *Boyd* court, "[t]he historical analysis and competing social policies relied on by the Court in its § 1983 cases are not found in the § 1981 area." 522 F.Supp. at 1119. Further, the *Boyd* court noted that the Supreme Court specifically stated in *Johnson v. Railway Express Agency,* 421 U.S. 454, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1974), that punitive damages are available under certain circumstances in a § 1981 action. Given the dictum in *Johnson* and the dissimilarities between § 1981 and § 1983, the *Boyd* court declined to "carve out an immunity that the Supreme Court in no way suggests should apply." 522 F.Supp. at 1119.

The *Heritage Homes* and *Ferguson* courts, however, found *Boyd* unpersuasive. In *Heritage Homes,* the First Circuit point-

ed out that although many courts have treated § 1981 and § 1983 as separate and independent causes of action, the principal difference between the two—municipal liability—was eliminated when the Supreme Court overruled *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), in *Monell v. Department of Social Services of the City of New York,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978), and established that municipalities could be sued under § 1983. Further, the court stated that although the Supreme Court had approved punitive damages under certain circumstances in § 1981 cases in *Johnson v. Railway Express Agency, supra,* neither of the two cases cited for this dictum in *Johnson* involved a suit against a municipality or mentioned § 1981. Rather, the cases involved municipal *officials* sued under *§ 1983.*

In *Ferguson,* Judge Will felt *Boyd* was wrongly decided because although §§ 1981 and 1983 have been interpreted differently in some respects, the two statutes have also been interpreted the same in other respects. For example, the separate legislative history and constitutional underpinnings of the two statutes have not prevented courts from holding that under both statutes, a plaintiff must prove discriminatory intent. Therefore, Judge Will stated, the two statutes do not necessarily require different constructions under any given circumstance.

■ We are persuaded by the more recent cases, two of which were decided by district court judges in our circuit, that punitive damages are not available against a municipality under § 1981. The Supreme Court indicated in *Fact Concerts* that the touchstone for municipal liability issues is whether Congress specifically intended to abrogate the common law immunity in passing a certain statute. 453 U.S. at 263, 101 S.Ct. at 2757–58. However, no court addressing the question of punitive damages under § 1981 has found any Congressional intent to abrogate the common law immunity. The *Boyd* court, which held that

punitive damages are available against a municipality under § 1981, simply concluded, without citing any legislative history, that the same preservation of municipal immunities found by the *Fact Concerts* court in the deliberations of the 42d Congress with regard to § 1983 could not be imputed to the legislators enacting § 1981. The court's reasoning was that § 1981, and the Thirteenth Amendment on which it is based, were broadly intended to eradicate all badges of slavery, both public (state and municipal) and private. However, we agree with the First Circuit in *Heritage Homes* that this argument is untenable in light of *Monell's* elimination of municipal immunity under § 1983. The *Monell-Fact Concerts* result—that a municipality is not liable for punitive damages under § 1983 even though it can be sued under § 1983—disposes of the *Boyd* court's argument that a municipality must be liable for punitive damages under § 1981 because it can be sued under § 1981.

Accordingly, we grant the motion to dismiss the claim for punitive damages against the City and its officials sued in their official capacities under § 1981.

### 6. Constitutional Defamation

Defendants argue that plaintiff has not stated a constitutional defamation claim because the alleged defamation did not take place in conjunction with his termination.

It is well established that defamation alone is not actionable under § 1983 even though carried out under color of state law. *Paul v. Davis,* 424 U.S. 693, 96 S.Ct. 1155, 47 L.Ed.2d 405 (1976). However, stigma to reputation, when found in conjunction with discharge or failure to rehire, raises a constitutional liberty interest which may not be abridged without notice and a hearing sufficient to give the aggrieved party a chance to clear his name. *Colaizzi v. Walker,* 542 F.2d 969, 973 (7th Cir.1976), *cert. denied,* 430 U.S. 960, 97 S.Ct. 1610, 51 L.Ed.2d 811 (1977); *see also Smith v. Board of Education of Urbana School District No. 116 of Champaign County, Illinois,* 708 F.2d 258 (7th Cir.1983).

The issue in this case is whether the alleged defamation occurred close enough in time to be linked, for purposes of the Fourteenth Amendment, to plaintiff's termination. In his complaint, plaintiff acknowledges that the defamatory remarks were made "after" the termination, *see* ¶ 26, but he doesn't say how long after. It is apparent, though, that the alleged defamation related to the reasons for plaintiff's termination.

We have not found a case which decides whether a claim for "stigma-plus" test has stated that the termination and the defamation must be simultaneous. In *Paul v. Davis, supra,* the Supreme Court stated that "the defamation had to occur *in the course* of the termination of employment." 424 U.S. at 710, 96 S.Ct. at 1165, emphasis supplied. The Seventh Circuit has used phrases such as "in conjunction with," *Colaizzi v. Walker, supra,* at 973; "accompanied by," *id.;* "in the process of," *Margoles v. Tormey,* 643 F.2d 1292, 1298 (7th Cir.), *cert. denied,* 452 U.S. 939, 101 S.Ct. 3082, 69 L.Ed.2d 954 (1981); "in the course of," *Elbert v. Board of Education of Lanark Community Unit School District # 305, Carroll County, Illinois,* 630 F.2d 509, 512 (7th Cir. 1980), *cert. denied,* 450 U.S. 1031, 101 S.Ct. 1741, 68 L.Ed.2d 226 (1981); and "in connection with," *Austin v. Board of Education of Georgetown Community Unit School District No. 3 of Vermilion County, Illinois,* 562 F.2d 446, 449 (7th Cir.1977). Therefore, we decline to lay down an absolute rule that a § 1983 stigma-plus claim cannot be stated where the alleged defamation occurred subsequent to the termination.

The purpose of providing a hearing to a terminated employee who has been defamed is so that the employee's future job possibilities and standing in the community will not be damaged. Although public employers may fire at-will employees without giving a reason, they may not, without affording due process, accompany that firing with the release of information which would make it virtually impossible for the employee to find new employment in similar positions or which would seriously

stigmatize the employee in the eyes of his community. *Smith v. Board of Education, supra.* Given this purpose, we do not believe that a public employer may be excused from affording due process to an employee whose reputation the employer damages simply because the employer waits for a period of time after terminating the employee to make defamatory remarks. The damage to the individual is the same whether the defamatory information is released simultaneously with the firing or some period of time afterwards. Where, as here, the defamatory remarks relate to the termination, we believe that the "in the course of," "in conjunction with," "accompanied by," "in the process of," "in the course of," and "in connection with" tests can be met even though some period of time passes between the termination and the publication of the defamatory remarks. Although plaintiff's complaint does not specify how much time elapsed here, there is no indication that the time span was unreasonably long. On a motion to dismiss a *pro se* complaint, we will not require that the time span be pled. If it develops that the time between the termination and the defamation was so long as to attenuate any link between the two, we can dispose of that issue on a motion for summary judgment. For now, though, we are unwilling to hold that a claim cannot be stated unless the termination and the defamation were simultaneous where, as here, the later defamation clearly relates back to the termination.

## CONCLUSION

For the reasons stated, we deny the motion to dismiss the age discrimination claim; we reserve judgment pending further briefing on the motion to dismiss the individual defendants; we grant the motion to dismiss any prayer for compensatory and punitive damages under Title VII and the Rehabilitation Act of 1973; we grant the motion to dismiss the complaint to the extent it seeks to enjoin federal officials from disbursing revenue sharing money to the City; we grant the motion to dismiss to the extent the complaint seeks punitive damages under 42 U.S.C. §§ 1981 and 1983 against the City and its officers acting in their official capacities; and we deny the motion to dismiss the complaint to the extent it alleges deprivation without due process of a constitutional liberty interest.