Peter J. **WAINWRIGHT**, Plaintiff,

v.

**WASHINGTON METROPOLITAN AREA TRANSIT AUTHORITY**, Schindler Elevator Company, Westinghouse Electric Corporation, and Westinghouse Elevator Company, Defendants.

**Civil Action No. 93–0044(RCL).**

United States District Court, District of Columbia.

March 21, 1997.

Robert Brian Cave, Emily M. Yinger, James K. Trefil, Hogan & Hartson L.L.P., Washington, DC, for Plaintiff.

---

Gerard Joseph Stief and David R. Keyser, Associate General Counsels, Washington, DC, Edward J. Longosz, II, Naomi Beer, Miles & Stockbridge, McLean, VA, for Defendants.

## MEMORANDUM AND ORDER

LAMBERTH, District Judge.

This matter comes before the court on plaintiff Wainwright's motion to reinstate punitive damages against defendant Washington Metropolitan Area Transit Authority ("WMATA"). For the reasons set forth below, plaintiff's motion is denied.

## I. BACKGROUND

Plaintiff filed suit for injuries arising from an injury sustained from an escalator operated by WMATA, and included a count for punitive damages against both defendant WMATA and defendant Westinghouse/Schindler. In an opinion of this court dated October 17, 1995, the punitive count against WMATA was dismissed. *Wainwright v. WMATA*, 903 F.Supp. 133, 137 (D.D.C.1995). Though defendant claimed WMATA to be immune from any punitive damages as a general matter, the court never reached that issue, as even under plaintiff's own claim that punitives were available if "extraordinary circumstances" were shown, such circumstances had not been shown and defendant's motion for summary judgment on this claim was granted. However, after newly discovered evidence was produced by WMATA, this court entertained Wainwright's motion to reinstate punitive damages, on plaintiff's claim that "extraordinary circumstances" could now be demonstrated.

After careful consideration of the issues presented, the court now finds that, as a general matter, WMATA is, in fact, immune from any award of punitive damages.

## II. DISCUSSION

■ WMATA was established by an interstate compact entered into by Maryland, Virginia and the District of Columbia, which was consented to by Congress. Pub.L. No. 89–774, 80 Stat. 1324 (1966), as amended. As a governmental entity, WMATA claims to come before this court complete with the attendant immunities governmental entities enjoy.

Plaintiff Wainwright advances the argument that § 12(a) of WMATA's compact contains a "sue or be sued" clause, which, according to the plaintiff, "constitutes a full waiver of WMATA's sovereign immunity for all purposes, *including* punitive damages." Pl.'s Reply in Supp. of Mot. to Reinst. Pun. Dam. and for Sanct., October 24, 1996 at 7 (emphasis in original).[1] Therefore, plaintiff wishes to pursue his claim for punitive damages against WMATA as if WMATA were a standard, private corporation.

WMATA, however, argues that § 80 of the compact, which reads:

The Authority [WMATA] shall be liable for its contracts and for its torts and those of its Directors, officers, employees and agent committed in the conduct of any proprietary function, in accordance with the law of the applicable signatory (including rules on conflict of laws), but shall not be liable for any torts occurring in the performance of a governmental function

establishes WMATA's immunity. To this end, WMATA submits a number of cases disallowing punitive damages against it[2], but these cases are generally cursory and do not specifically address the issue raised by plaintiff: what does the "sue or be sued" clause mean in the face of clear precedent finding WMATA immune to suit in at least in some respects?

Despite Wainwright's protestations that WMATA has fully waived its immunity as a

---

**1.** Wainwright also argues it need not even meet "extraordinary circumstances" because that standard is applied only against a municipality that has retained its sovereign immunity. Because WMATA has already waived its immunity, Mr. Wainwright need only present sufficient evidence to allow the jury to conclude that WMATA 'willfully disregarded' his rights and safety."

Pl.'s Supp. Reply in Supp. of Pl.'s Mot. to Reinst. Pun. Dam., February 25, 1997 at 6–7.

**2.** *E.g., Williams v. WMATA*, Civil No. 83–2747 (D.D.C.1984); *Banks v. WMATA*, Civil No. 85–3873 (D.D.C.1986); and *Ransome v. WMATA*, Civil No. 86–1747 (D.D.C.1987).

result of § 12(a) "sue and be sued" language, case law does not support this proposition. Plaintiff argues that under *Federal Housing Administration v. Burr*, 309 U.S. 242, 245, 60 S.Ct. 488, 490–91, 84 L.Ed. 724 (1940), sue or be sued clauses should be liberally construed, and in Wainwright's eyes, this allows WMATA to be sued for anything a private corporation could be liable for, including punitive damages. *See Baker v. Runyon*, 922 F.Supp. 1296, 1297–98 (N.D.Ill.1996) (ruling that a sue or be sued clause in postal service statute allows punitive damages); *Federal Deposit Insurance Corp. v. Meyer*, 510 U.S. 471, 114 S.Ct. 996, 127 L.Ed.2d 308 (1994) (holding that the FSLIC's sue-and-be-sued clause waived sovereign immunity for constitutional tort claims).

Plaintiff argues that under *Meyer*, absent a clear showing that Congress meant to narrow the scope of the sue or be sued clause, it is presumed that immunity is fully waived.[3] That may be, but the WMATA statute does give a clear showing. It's called Section 80 of the WMATA compact. There, the statute indicates the signatories' and Congress' desire to make WMATA immune from torts occurring from the performance of governmental functions, but to be liable for torts occurring when operating in a proprietary function.[4]

Furthermore Wainwright completely ignores or misconstrues two prior cases from this circuit which unequivocally indicate that WMATA has retained partial immunity from suit.

· In *Morris v. WMATA*, 781 F.2d 218 (D.C.Cir.1986) our Court of Appeals held that the signatories to the compact, together with Congress, had conferred their respective sovereign immunities (including immunity under the Eleventh Amendment) on WMATA, and those entities had then partially waived those immunities in Section 80 of the Compact. *See, Sanders v. WMATA*, 819 F.2d 1151, 1154 (D.C.Cir.1987) (*explaining* the court's holding in *Morris*).

Unlike Wainwright's claim that Section 80 is a *grant* of immunity, *Morris* decided that by virtue of the intentions of the Compact signatories and the very structure of WMATA itself, Metro enjoys the immunities of the entities which created it. *Morris*, 781 F.2d at 224–25.[5] Section 80 operates as a waiver of immunity, not a grant, and Section 80 waives only torts arising from proprietary functions.

Wainwright believes that *Morris* all but ignored the effect of § 12(a)'s sue or be sued clause. WMATA, however, contends that plaintiff's interpretation of 12(a) was "expressly rejected in *Morris*" in *Morris'* footnote 3. There, Judge Bork, writing for the majority, indicated that "[r]eliance on the 'sue or be sued' clause would be particularly inappropriate in this case where another section of the Compact, § 80, specifically and expressly delineates WMATA's consent to sued. That scope is clear: WMATA consents to be sued for torts occurring in the

---

**3.** In *Meyer*, the court twice emphasized that "FDIC does not attempt to make the 'clear' showing of congressional purpose necessary to overcome the presumption that immunity has been waived," and that "[i]n its brief discussion of the sue-and-be-sued clause, FDIC does not mention—let alone attempt to overcome—the presumption of waiver." *Meyer*, 510 U.S. at 481, 114 S.Ct. at 1003. But with respect to WMATA, this is most assuredly not the case. As is discussed in this opinion, it is clear that the sue-and-be-sued clause waiver presumption is overcome. If anything, *Meyer* indicates that such clauses are not absolute, but merely are assumed to waive immunity absent a clear showing of intent to the contrary. Section 80 of the WMATA compact provides this clear showing.

**4.** The court questions why, if the "sue and be sued" clause meant that WMATA waives immuni-

ty unless it otherwise clearly retains it, Section 80 was written to say that WMATA "shall be liable for its contracts and for its torts ... committed in the conduct of any proprietary function ..." If the signatories intended the sue and be sued clause to waive immunity liberally, this passage is extraneous because we would already have known WMATA is liable. The more likely conclusion is that the signatories had no intention of creating a broad waiver, and thus in Section 80 they created a limited, explicit exception.

**5.** "[I]t is absolutely clear that Maryland, Virginia, and the Congress of the United States intended that WMATA should receive the eleventh amendment immunity of the states for torts of the sort alleged here [civil rights injuries]." *Morris'* reasoning applies equally strongly to the issue of punitive damages.

performance of proprietary, but not governmental, functions."

Plaintiff attempts to explain away *Morris'* footnote 3 by stating that it actually supports *his* position. "Judge Bork noted only that the sue-and-be-sued clause could not act as a waiver of *Eleventh Amendment* immunity, he specifically did not address the question now before the Court—that of WMATA's *sovereign* immunity." Pl.'s Supp. Reply in Sup. of Pl.'s Mot. to Reinst. Pun. Dam., February 26, 1997 at 6. Wainwright never *explains* what he thinks any possible difference between sovereign immunity and Eleventh Amendment immunity would be in this case—probably because, like the court, he can't think of any. In fact, in the very first paragraph of *Morris,* the court stated it was affirming the dismissal of plaintiff's complaint "because, as the district court held, WMATA's limited *sovereign immunity* prevents liability from attaching in this case." *Id.* at 219. On the very same page, *Morris* states, "WMATA's *sovereign immunity* exists because the signatories have successfully conferred their respective *sovereign immunities* upon it." *Id.* On the next page, the court says that "[i]t is clear that each of the three signatories [to WMATA] attempted to confer its *sovereign immunity* upon WMATA." *Id.* at 220. On the next page, *Morris* discusses how Eleventh Amendment immunity is waived as a general matter, and then, on the same page, states that "[t]he last sentence of Section 80 was meant to relate to *sovereign immunity* . . . ." Why doesn't the plaintiff think *Morris* dealt with sovereign immunity? Judges Bork, Scalia, and J. Skelly Wright obviously thought it did. This court could continue line by line with *Morris'* references to "sovereign immunity" and how at least for our purposes, this is interchangeable with Eleventh Amendment immunity.

The only possible difference plaintiff raises is where, in footnote 3 of *Morris,* the court cited to *Trotman v. Palisades Interstate Park Commission,* 557 F.2d 35, 39–40 (2d Cir.1977) noting that "although 'sue-and-be-sued' clause in interstate compact may waive compacting states' immunity in their own courts, it does not waive eleventh amendment immunity in federal courts." Though the District of Columbia Superior Court is just across the street—this case is in federal court, and immunity principles apply. This court does not need to rule on whether WMATA would be immune from suit in Virginia, District of Columbia, or Maryland state courts, but in federal court, it certainly entertains immunity, at least for governmental functions, for the reasons clearly laid down in *Morris* and again addressed in *Sanders.*

It appears that the sue-and-be-sued clause, though generally read broadly, cannot, as a matter of law—or even common sense—be so read in this case.

■ There is one more issue to deal with, however. The operation of an escalator is a proprietary function. Plaintiff's injuries arose from his ride on an escalator. WMATA does not enjoy immunity from torts arising out of WMATA's engagement in proprietary functions. That much is clear. Perhaps punitive damages are simply an outgrowth of tort damages, and therefore should be allowed in this case?

Though this argument does have some attraction, the court believes punitive damages are different than simple tort damages arising from proprietary acts.

In *City of Newport v. Fact Concerts,* 453 U.S. 247, 267, 101 S.Ct. 2748, 2759–60, 69 L.Ed.2d 616 (1981), the United States Supreme Court stated that punitive damages result in a windfall to a fully compensated plaintiff, and that an increase in taxes or a reduction in public services would likely follow—meaning that a blameless public would foot the bill. As the court remarked, "[d]amages awarded for punitive purposes, therefore, are not sensibly assessed against the governmental entity itself." *Id.*

Though plaintiff strenuously attempts to draw distinctions between WMATA and a government or municipality, there can be no serious doubt that WMATA is a governmental agency, and given the structure of WMATA, punishing it would simply mean punishing its innocent riders or the citizens of the signatory governments which pay taxes to support Metro.

In addition, other courts addressing this issue have reached the conclusion that even when operating in a proprietary function, punitive damages are not available against governmental units. In *Bolden v. Southeastern Pennsylvania Transportation Authority,* the United States Court of Appeals for the Third Circuit rejected such a claim against SEPTA, a WMATA-like entity, stating that "even when performing 'proprietary' functions," municipalities and counties historically have enjoyed immunity from punitive damages. 953 F.2d 807, 830 (3d Cir.1991). The court concluded that SEPTA, "though not a governmental unit in the traditional sense ... may be analogized to a government entity for purposes of determining whether SEPTA should be liable for punitive damages." *Id.* The same idea is true in *Ferguson v. Joliet Mass Transit Dist.,* 526 F.Supp. 222, 225 (N.D.Ill.1981) decided shortly after *City of Newport,* where that court stated, "we conclude that immunity from punitive damages as distinguished from sovereign immunity as to all damages should apply regardless of the particular function of the municipal corporation which is involved in the suit."

Thus, it seems clear, as a matter of law, logic, and public policy, that punitive damages are unavailable against WMATA, even for torts arising out of its proprietary functions.

### III. CONCLUSION

For the reasons stated above, Wainwright's motion to reinstate punitive damages against WMATA is denied.

SO ORDERED.