HERITAGE HOMES OF ATTLEBORO,
INC., Plaintiff, Appellee,

v.

The SEEKONK WATER DISTRICT,
Defendant, Appellant.

HERITAGE HOMES OF ATTLEBORO,
INC., Plaintiff, Appellant,

v.

The SEEKONK WATER DISTRICT,
Defendant, Appellee.

Nos. 80–1646, 80–1704.

United States Court of Appeals,
First Circuit.

Submitted Nov. 25, 1981.

Decided Jan. 25, 1982.

Certiorari Denied June 14, 1982.
See 102 S.Ct. 2934.

Stephen D. Clapp and Armstrong, Pollis & Clapp, N. Attleboro, Mass., on memorandum on remand for Heritage Homes of Attleboro, Inc.

William Hickey, Washington, D.C., John J. Graham, Boston, Mass., Fred M. Vinson, Jr., Washington, D.C., Kenneth C. Bass, III, Reston, Va., and Reasoner, Davis & Vinson, Washington, D.C., on memorandum on remand for the Seekonk Water Dist.

Before COFFIN, Chief Judge, ALDRICH, Circuit Judge, WYZANSKI,* Senior District Judge.

COFFIN, Chief Judge.

When we last considered this protracted case we upheld the district court's finding that Seekonk Water District had violated 42 U.S.C. §§ 1981 & 1983, modified its holding that Heritage Homes had failed to prove compensatory damages, and affirmed its award of punitive damages against the District. 648 F.2d 761 (1st Cir. 1981). Subsequently, in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), the Supreme Court held that a municipality is immune from puni-

* Of the District of Massachusetts, sitting by des-  ignation.

tive damages under 42 U.S.C. § 1983. On petition for a writ of certiorari, the Court vacated our prior judgment in this case and remanded it to our court "for further consideration in light of" *Fact Concerts.* —— U.S. ——, 102 S.Ct. 81, 70 L.Ed.2d 76. We now reverse the district court's award of punitive damages against the Water District, a municipal corporation under state law, but reaffirm all other aspects of our prior opinion.

Heritage Homes makes two arguments on remand. First, it stresses that *Fact Concerts* involved the bad faith actions of public officials whereas the present case deals with the malicious conduct of the voting taxpayers themselves. Second, it argues that *Fact Concerts* dealt with municipal immunity under § 1983 and that both the history and policy underlying § 1981, which is an alternative cause of action in this case, preclude municipal immunity.

As support for its first argument, Heritage Homes claims that this case falls within the Court's caveat that punitive damages might be available against a municipality in "an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights." *Fact Concerts, supra,* at 267, 101 S.Ct. at 2760 n.29. Although the finding of the district court that there was "overwhelming" evidence that the Water District was motivated by racial considerations seems to us well supported by its account of the blatantly racial discussions that took place preceding the vote to exclude Heritage Homes from the District, we conclude that the facts of this case do not fit into any exception that the Court is likely to carve out of its broad holding that "a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Id.* at 271, 101 S.Ct. at 2762. Of the thousands of members of the Water District,[1] only some 80 to 85 attended the crucial meeting. Of these 66 voted to exclude and 8 voted to include Heritage Homes. Absent widespread knowledgeable participation by taxpayers, the analogy to municipal officials seems apt: to award punitive damages against the Water District would not serve the purposes of punishment or deterrence. As the Court observed, "blameless or unknowing" taxpayers would be punished by imposing punitive damages here. The actions of a small claque of voters would burden several thousand nonparticipants, many of whom presumably were unaware of the entire controversy.

If the theory is that most of the taxpayers knew that a group of voters intended to discriminate but wanted to disassociate themselves by staying away from the meeting, this raises a number of troubling questions. How much did they know? How serious was the threat? When must a citizen or taxpayer attend a meeting or remain away, vote or abstain, at his or her peril? Without a more compelling showing, we have no doubt that the Court would reaffirm its reasoning that "[n]either reason nor justice suggests that . . . retribution should be visited upon the shoulders of blameless or unknowing taxpayers." *Id.* at 267, 101 S.Ct. at 2760.

With respect to the reality of deterrence, the chance that 66 voters would be deterred at a meeting by the knowledge that punitive damages, if finally assessed, would be shared by several thousand taxpayers, is as much "deterrence in the air" as imposing punitive damages against a municipality for the actions of its officials. Awarding punitive damages against the offending voters would seem to be "a more effective means of deterrence." *Id.* Moreover, the argument that punitive damages would encourage nonvoting taxpayers to participate and oppose actions which violate the Constitution is not persuasive in the absence of

---

1. The precise number of residents in the District is not clear from the record. In its Memorandum on Remand, the Water District states that it had 13,500 residents at the time; but from the record it appears that 13,500 is the population of the Town of Seekonk, of which the Water District comprises only a portion.

Heritage Homes has not objected to the assertion by the Water District, nor has it provided its own figure. The exact number of members of the District is not crucial to our holding, though this might be a different case were there only 100 members instead of several thousand.

proof of broad public awareness that malicious conduct is very likely to take place. And the same series of expansive questions recognized in connection with punishment must also be confronted here.

Heritage Homes' second argument is that any municipal immunity under § 1983 should not apply to violations of § 1981. In light of *Fact Concerts* we conclude that "both history and policy" support municipal immunity from punitive damages under § 1981. While § 1981 was enacted five years earlier than § 1983, Heritage Homes has failed to point to any legislative history, nor are we aware of any, which indicates that Congress intended to overturn the common law rule that municipal liability "did not extend to the award of punitive or exemplary damages."[2] *Id.* at 259–60, 101 S.Ct. at 2756. Even the proposal in 1871, embodied in the rejected Sherman amendment, to extend municipal liability for *compensatory* damages met with resistance; and its supporters specifically disavowed the goal of punishment for a governmental entity. We add that, had Congress crossed any Rubicon of municipal punitive liability five years earlier in connection with § 1981, this fact would most probably have surfaced in the 1871 debate.

However strong the policies underlying § 1981, our earlier analysis indicates that imposing punitive damages against the Water District would not serve to punish or deter the responsible actors. We are not only bound by the holding of *Fact Concerts* but must also defer to its reasoning; and the Court's discussion of the rationale for levying punitive damages leaves no room for distinguishing § 1981 from § 1983. *See id.* at 259–72, 101 S.Ct. at 2756–62. In particular, the Court's concern with not imposing huge financial burdens on municipalities is equally applicable to § 1981. While in the aggregate there may be fewer suits under § 1981 than under § 1983, the Court's reasoning applies even to a single case like this one: since the unlimited taxing power of a municipality can be taken into account in fashioning the amount of punitive damages, there is a likelihood of extremely large awards which would not only strain local treasuries but might also curtail public services. "Absent a compelling reason for approving such an award, not present here, we deem it unwise to inflict the risk." *Id.* at 271, 101 S.Ct. at 2762.

We are aware that at least one court has accepted the argument that *Fact Concerts* should not be construed to apply to § 1981. *Boyd v. Shawnee Mission Public Schools,* 522 F.Supp. 1115 (D.Kan.1981). We are not persuaded by its reasoning. The district court in *Boyd* relied in part on its view that the federal courts have traditionally treated §§ 1981 and 1983 "as totally distinct and as independent causes of action." While at one time courts had held municipalities liable under § 1981 in spite of the Court's holding in *Monroe v. Pape,* 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961), that municipalities enjoyed absolute immunity under § 1983, this different treatment was based upon the explicit language of the statutes: § 1983 stated that no "person" shall deprive another of federal rights, and a municipality was not thought to be a "person" for this purpose, whereas § 1981 contains no similar limitation. *See Sethy v. Alameda County Water Dist.,* 545 F.2d 1157, 1159–60 & n.5 (9th Cir. 1976). In any case, *Monroe* has since been overruled so that municipalities no longer enjoy blanket immunity under either provision. *See Monell v. Department of Social Services,* 436 U.S. 658, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978).

The district court also relied upon the Supreme Court's dictum in *Johnson v. Railway Express Agency,* 421 U.S. 454, 460, 95 S.Ct. 1716, 1720, 44 L.Ed.2d 295 (1975), that "[a]n individual who establishes a cause of action under § 1981 is entitled to both equitable and legal relief, including . . ., under certain circumstances, punitive damages." The two cases cited for this proposition,

---

**2.** While the one jurisdiction (New Hampshire) which had awarded punitive damages against a municipality before 1866 had reversed itself in 1870, we doubt that this change would alter the Court's view that the common law generally provided immunity from such damages, even in 1866.

*Caperci v. Huntoon*, 397 F.2d 799 (1st Cir.), *cert. denied*, 393 U.S. 940, 89 S.Ct. 299, 21 L.Ed.2d 276 (1968), and *Mansell v. Saunders*, 372 F.2d 573 (5th Cir. 1967), both held that punitive damages could be imposed against government officials for violations of § 1983; neither case involved a suit against a municipality or mentioned § 1981. The Court's citation of these cases thus implies that it equates the analysis of punitive damages under the two provisions, which in light of *Fact Concerts* casts grave doubt on the validity of the dictum as applied to municipalities.

We therefore reverse that part of the district court's judgment awarding punitive damages against the Seekonk Water District. Since the rest of our prior opinion is unaffected by the Court's holding in *Fact Concerts*, we reaffirm our other conclusions.

No costs to be assessed for this phase of the proceedings. Other costs and counsel fees are to be awarded to plaintiff as we indicated in our prior opinion.