**Charles WADE, et al., Plaintiffs,**

v.

**CICERO, ILLINOIS, et al., Defendants.**

**No. 83 C 2760.**

United States District Court,
N.D. Illinois, E.D.

Aug. 11, 1983.

**158**

Stephen Novack, Marilyn J. Klawiter, F. Thomas Hecht, Levy & Erens, Harvey Grossman, Roger Baldwin Foundation of ACLU, Inc., Chicago, Ill., for plaintiffs.

Thomas D. Nash, Jr., George S. Lalich, Nash & Lalich, Chicago, Ill., Steven C. Filipowski, Donna Baffoe McDonald, Cicero, Ill., Joseph A. Murphy, John B. Murphy, Steven A. Stender, Ancel, Glink, Diamond, Murphy & Cope, Nancy G. Lischer, Michael J. Hayes, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

GRADY, District Judge.

This is a race discrimination action under 42 U.S.C. §§ 1981, 1982, 1983 and 1985(3).

Plaintiff Wade was a horse-care worker in the Town of Cicero, where he and his family lived. Plaintiffs, who are black, allege that defendants, on account of plaintiffs' race, excluded the three school-aged Wade children from the Cicero public schools. Plaintiffs further allege that as a result of this conduct, Wade was forced to leave his employment, he and his children were forced to leave their residence, and the three school-aged children were denied the right to attend public school in Cicero. Defendants have moved to strike plaintiffs' prayer for punitive damages under 42 U.S.C. §§ 1981, 1982 and 1983.[1] We grant that motion.

### Discussion

The question we address is whether this case falls within an arguable exception to the rule in *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), that punitive damages are not available in a § 1983 action against a municipality.

In *Fact Concerts,* one of the Court's reasons for its holding was that it would be unfair to assess all taxpayers for a punitive damage award when the punishment actually would be aimed at the bad faith conduct of officials and agents of the municipality. However, in footnote 29, the Court may have left open an exception:

> It is perhaps possible to imagine an extreme situation where the taxpayers are directly responsible for perpetrating an outrageous abuse of constitutional rights. Nothing of that kind is presented by this case. Moreover, such an occurrence is sufficiently unlikely that we need not anticipate it here.

453 U.S. at 267 n. 29, 101 S.Ct. at 2760 n. 29.

We have found only two published cases which discuss this possible exception. In both cases the courts assumed that footnote 29 created an exception but held that the facts of the case did not warrant applying

---

1. Although plaintiffs in their response memorandum briefed the question whether punitive damages are available against a municipality under 42 U.S.C. § 1985(3), defendants' motions do not mention that section. Accordingly, we express no opinion on this issue.

the exception. In *Heritage Homes of Attleboro, Inc. v. Seekonk Water District,* 670 F.2d 1 (1st Cir.), *cert. denied,* 457 U.S. 1120, 102 S.Ct. 2934, 73 L.Ed.2d 1333 (as to petition of *Heritage Homes* ), *cert. denied,* —— U.S. ——, 103 S.Ct. 67, 74 L.Ed.2d 67 (1982) (as to petition of Seekonk Water District), 80 to 85 residents of a water district attended a meeting at which blatantly racial discussions took place. Following the discussions, the residents voted 66 to 8 to exclude from the district a real estate development which was willing to sell homes to black people. The court held that since there were approximately 13,500 residents in the water district at the time of the vote, punitive damages should not be assessed against the district based on the actions of 66 residents. The court would have required "widespread knowledgeable participation by taxpayers...." 670 F.2d at 2. Absent such participation, it would be unfair for the "actions of a small claque of voters [to] burden several thousand non-participants, many of whom presumably were unaware of the entire controversy." *Id.*

In *Webster v. City of Houston,* 689 F.2d 1220 (5th Cir.1982), police officers, pursuant to a widely-accepted municipal custom, had planted a gun on the victim of a police shooting to make it appear that the shooting was in self-defense. Unlike the *Heritage Homes* court, the *Webster* court did not discuss whether the police action could be attributable directly to the Houston taxpayers because it found that the action did not "rise to the level of outrageous conduct" contemplated by footnote 29. 689 F.2d at 1229.[2]

We need not decide here whether footnote 29 creates an exception to municipal immunity from punitive damages because the facts as alleged in plaintiffs' complaint, as supplemented by plaintiffs' response memorandum,[3] would not bring this case within the exception. While we do not wish to denigrate the seriousness of the constitutional violation alleged by plaintiff, this case is not one "where the taxpayers are directly responsible" for perpetrating the constitutional violation. *Fact Concerts* at 267 n. 29, 101 S.Ct. at 2760 n. 29.

Plaintiffs argue that the "townspeople" of Cicero have promoted a climate of racial hatred such that the municipal officials, in taking the action challenged here, were merely ratifying the egregiously discriminatory views of Cicero's citizens. However, this is not an allegation that "the taxpayers are directly responsible" for the challenged actions; on the contrary, plaintiffs appear to be conceding that the "townspeople" are only indirectly responsible. Aside from these general allegations against the "townspeople," plaintiffs have pointed to a few isolated incidents of racial hatred by a relatively small number of individuals. Again, without meaning to denigrate the seriousness of these allegations, we do not believe that they impute direct responsibility to all of the taxpayers of Cicero. *See Heritage Homes, supra.* If footnote 29 creates an exception at all, the exception would appear to be applicable more in the case, say, of a referendum in which the voters overwhelmingly mandated an unconstitutional action. *See Webster, supra,* at 1231 n. 1 (Goldberg, J., specially concurring).

Accordingly, we grant the motion to strike plaintiffs' prayer for punitive damages under §§ 1981, 1982 and 1983.[4]

---

**2.** In a specially concurring opinion, Judge Goldberg argued that *Fact Concerts* did not allow for any exceptions because the Court had flatly stated: "[W]e hold that a municipality is immune from punitive damages under 42 U.S.C. § 1983." *Webster,* 689 F.2d at 1231, quoting from *Fact Concerts,* 453 U.S. at 271, 101 S.Ct. at 2762.

**3.** Defendants have filed a separate motion to strike plaintiffs' response brief because it allegedly contains factual material not pleaded in the complaint. In light of our disposition of the motions to strike the prayer for punitive damages, we need not decide this question.

**4.** Although we have discussed only cases dealing with 42 U.S.C. § 1983, the same rationale would apply with regard to 42 U.S.C. §§ 1981 and 1982. We have very recently held that under the rationale of *Fact Concerts,* punitive damages are not available against a municipality in an action under § 1981. *Holly v. City of Naperville,* 571 F.Supp. 668 (1983). *Accord,*

*Heritage Homes, supra.* With regard to § 1982, we have been unable to find a post-*Fact Concerts* case on point. However, the *Fact Concerts* analysis leads to the conclusion that punitive damages are not available against a municipality under § 1982. Neither the legislative history of § 1982 nor the policy rationale for punitive damages supports awarding such damages against a municipality. To the extent *Morales v. Haines,* 486 F.2d 880 (7th Cir.1973), holds otherwise, we believe that case is no longer good law following *Fact Concerts. Accord, Bell v. City of Milwaukee,* 536 F.Supp. 462, 474 (E.D.Wis.1982). Our conclusion is bolstered by *Phillips v. Hunter Trails Community Association,* 685 F.2d 184 (7th Cir. 1982). There, a community association which was sued under § 1982 attempted to clothe itself with municipal immunity based on *Fact Concerts* and *Marsh v. Alabama,* 326 U.S. 501, 66 S.Ct. 276, 90 L.Ed. 265 (1944), which the association argued was authority for treating such a group as a municipality. The 7th Circuit said the merits of this argument "seem[ed] doubtful," 685 F.2d at 191, but declined to reach the merits since the argument had not been raised in the district court. Were *Morales* still good law, the association's argument in *Phillips* would not have "seem[ed] doubtful" but rather would have been patently untenable.