Conte v. SSA                        CV-02-216-M    05/12/03
                    UNITED STATES DISTRICT COURT

                       DISTRICT OF NEW HAMPSHIRE


Carl J. Conte,
     Claimant

     v.                                    Civil No. 02-216-M
                                           Opinion No. 2003 DNH 075
Jo Ann B. Barhnart,
Commissioner, Social
Security Administration,
     Respondent


                          O R D E R


     Pursuant to 42 U.S.C. § 405(g), Carl J. Conte ("claimant")

moves to reverse the Commissioner's decision denying his

application for Social Security disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. § 423.  The

Commissioner, in turn, moves for an order affirming her decision.

For the reasons given below, this matter is remanded to the

Administrative Law Judge ("ALJ") for further proceedings

consistent with this opinion.



                       Standard of Review

     The statute governing the standard of review in this case

provides, in pertinent part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing.  The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . .

42 U.S.C. § 405(g).  However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'"  Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

As for the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts."  Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)).  In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla.  It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

2

Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 11), which is part of the court's record. The facts included in that statement are not reiterated here, but will be referred to as necessary.

Claimant filed an application for Social Security disability insurance benefits on December 29, 1999, claiming that he had become disabled on July 28, 1999, as a result of a workplace

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).

accident on that date. Claimant, who was then employed as a truck driver, slipped and fell while standing on the cab of his truck and injured his neck and left shoulder. As a result of his injury, claimant underwent a variety of physical therapy regimens and medical procedures, including a C5-6 and C6-7 cervical discectomy with fusion and plating, performed on March 3, 2000.

On June 4, 2001, a hearing was held before an Administrative Law Judge ("ALJ") at which claimant and a vocational expert testified. In the body of his decision, dated July 26, 2001, the ALJ made the following observations:

> The claimant's allegations regarding his functional impairment and [its] impact on his ability to work [are] not entirely credible in light of the reports of the treating and examining practitioners and the findings made on examination. . . .
>
> . . . It was noted by emergency room treating sources in August 1999 that while he has avoided work on his farm involving lifting or use of the shoulder, he was able to do some things around his farm (Exhibit 1F).
>
> . . .
>
> . . . Post-operatively the claimant complained of worsening neck pain and muscle spasms in [his] whole upper and lower [body]. Yet MRI showed that there was less compression than there was preoperatively. . . . Dr. Salerni [claimant's surgeon] anticipated that because of these post-operative complications, the

4

claimant's disability would last only six months (Exhibit 5F).[2]  In June 2000, the claimant was examined by Dr. Stuart Glassman who attributed the claimant's pain to de-conditioning and noted non-organic pain behavior.[3]  Dr. Glassman surmised that with increased activity the claimant could eventually return to work activity (Exhibit 7F).  An MRI of the lumbar spine taken in June 2001, while showing bulging at L4-5, also showed no compromise of the thecal sac or spinal canal stenosis to explain the claimant's complaints of back pain (Exhibit 8F).[4]

---

[2] Dr. Salerni actually wrote: "It is anticipated that [claimant's] disability will last for at least six months." (Administrative Transcript (hereinafter "Tr.") at 231 (emphasis added).)

[3] While Dr. Glassman noted both non-organic pain behavior and deconditioning (Tr. at 245), he did not attribute claimant's pain to deconditioning; he simply listed deconditioning as one of four impressions of claimant (Tr. at 245).  He did, however, note that "[a]s of 3/27/00, it was felt that the patient had mechanical back and neck pain."  (Tr. at 244.)

[4] The June 1, 2001, radiology report includes the following relevant information:

. . . Note is made of minor straightening of the normal lordotic curvature of the upper lumbar spine most likely related to muscle spasm.  L1-L2 and L2-L3 disc spaces are within normal limits.  Minor annular bulges are seen at L3-L4 level.  Broad-based annular bulge of the disc is seen at L4-L5 level associated with left parasagittal annular tear resulting in increased T2 signal intensity.  No disc herniation is seen however and the thecal sac is not compromised.

Broad-based annular bulge is seen at L5-S1 level.

CONCLUSION:  Left parasagittal annular tear seen at L4-L5 level without focal protrusions or herniations noted.  The disc shows broad-based annular bulge

5

When examined in light of the pain and subjective complaint criteria, the claimant's allegations of disabling pain and subjective complaints are found to be unexplained by and inconsistent with the objective medical evidence documented in the record. The allegations of his disability are not supported by the record evidence in light of the findings made on examination. The evidence as a whole does not support the allegation that the claimant's pain and subjective complaints are as disabling as he has alleged. The evidence credibly suggests that the claimant's subjective complaints are out of proportion given documented objective physical findings.

Further, a range of light work would not exacerbate the claimant's condition. His pain or subjective complaints do not significantly impact the claimant's daily activities. While it is apparent from the face of the evidence that pain and subjective complaints limit the claimant's work capacity, it has not been sufficiently established that they completely preclude all work activity. Rather, the evidence establishes that his pain and subjective complaints only limit the claimant to a range of light work. I, therefore, find that the claimant does not credibly experience pain or subjective complaints at the level that would interfere with his ability to perform a range of light work.

(Tr. at 17-19.) The ALJ's decision concludes with the following findings:

_____

without compromise of the thecal sac.

Minor annual bulges are seen at L3-L4 and L5-S1 level. No spinal canal stenosis is seen.

(Tr. at 276.)

6

5.  The undersigned finds the claimant's allegations regarding his limitations are not totally credible for the reason set forth in the body of the decision.

. . .

7.  The claimant has the residual functional capacity to lift and carry no more than 20 pounds occasionally and 10 pounds frequently.  Further, the claimant is limited in his ability to reach in all directions with the upper left extremity, must be able to alternate his position between sitting and standing at his option, cannot work at heights or around moving machinery and is limited to following simple and non complex instructions.

8.  The claimant is unable to perform any of his past relevant work (20 CFR § 404.1565).

. . .

12.  The claimant has the residual functional capacity to perform a significant range of light work (20 CFR § 416.967).

13.  Although the claimant's exertional limitations do not allow him to perform the full range of light work, using Medical-Vocational Rule 202.22 as a framework for decision-making, there are a significant number of jobs in the national economy that he could perform.  Examples of such jobs include work as an office helper, of which there are 600 jobs in the local economy and 88,000 jobs in the national economy, a cashier, of which there are 2,600 jobs in the local economy and 781,000 jobs in the national economy, a security guard, of which there are 208 jobs in the local economy and 87,000 jobs in the national economy, a furniture rental consultant, of which there are 150 jobs in the local economy and 22,000 jobs in the national economy and as a charge account clerk, of which

7

there are 300 jobs in the local and 59,000 jobs in the national economy.

14. The claimant was not under a "disability," as defined in the Social Security Act, at any time through the date of this decision (20 CFR § 404.1520(f)).

(Tr. at 21-22.)

## Discussion

According to claimant, the ALJ's decision should be reversed, and the case remanded, because the ALJ: (1) failed to properly weigh his subjective complaints of pain and, consequently, made a credibility assessment that was not supported by substantial evidence; (2) made a residual functional capacity ("RFC") assessment that was not supported by substantial evidence; and (3) failed to carry the Commissioner's burden at step five of the sequential evaluation process. The Commissioner disagrees, categorically.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a

8

disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in this case is whether claimant has ever been under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A).  Moreover,

> [a]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.  For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhard, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 1520). Here, all agree that claimant does not have the residual functional capacity to perform his past relevant work. Thus, resolution of his appeal turns on whether the ALJ correctly determined that he has the residual functional capacity to perform other work that exists in the national economy.

10

The claimant bears the burden of proving that he is disabled.  See Bowen v. Yuckert, 482 U.S. 137, 146 (1987).  He must do so by a preponderance of the evidence.  See Mandziej v. Chater, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing Paone v. Schweiker, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step
> 4 to show that he or she is unable to do past work due
> to the significant limitation, the Commissioner then
> has the burden at Step 5 of coming forward with
> evidence of specific jobs in the national economy that
> the [claimant] can still perform.  Arocho v. Sec'y of
> Health & Human Servs., 670 F.2d 374, 375 (1st Cir.
> 1982).  If the [claimant's] limitations are exclusively
> exertional, then the Commissioner can meet her burden
> through the use of a chart contained in the Social
> Security regulations.  20 C.F.R. § 416.969; Medical-
> Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,
> App. 2, tables 1-3 (2001), cited in 20 C.F.R. §
> 416.969; Heckler v. Campbell, 461 U.S. 458 (1983).  "The
> Grid," as it is known, consists of a matrix of the
> [claimant's] exertional capacity, age, education, and
> work experience.  If the facts of the [claimant's]
> situation fit within the Grid's categories, the Grid
> "directs a conclusion as to whether the individual is
> or is not disabled."  20 C.F.R. pt. 404, subpt. P, App.
> 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However,
> if the claimant has nonexertional limitations (such as
> mental, sensory, or skin impairments, or environmental
> restrictions such as an inability to tolerate dust, id.
> § 200(e)) that restrict his [or her] ability to perform
> jobs he [or she] would otherwise be capable of
> performing, then the Grid is only a "framework to guide
> [the] decision," 20 C.F.R. § 416.969a(d) (2001).  See
> also Pratts v. Chater, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

11

<u>Seavey</u>, 276 F.3d at 5 (parallel citations omitted).  Finally,

> In assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's subjective
> claims of pain and disability as supported by the
> testimony of the plaintiff or other witness; and (3)
> the plaintiff's educational background, age, and work
> experience.

<u>Mandziej</u>, 944 F. Supp. at 129 (citing <u>Avery v. Sec'y of HHS</u>, 797

F.2d 19, 23 (1st Cir. 1986); <u>Goodermote v. Sec'y of HHS</u>, 690 F.2d

5, 6 (1st Cir. 1982)).

Claimant insists that the ALJ's determination of his

residual functional capacity was not supported by substantial

evidence.  According to Claimant, the ALJ erred by: (1)

determining that the pain caused by his medical condition did not

prohibit him from working at a full-time job; (2) failing to

perform an analysis that meets the standards set out in Social

Security Ruling ("SSR") 96-8p, 1996 WL 374184 (S.S.A.) and 20

C.F.R. § 404.1545, which require a full narrative discussion of

the facts that support the ALJ's conclusions; (3) failing to

consider his need to use a cane for balance; (4) failing to

consider in any way the voluminous medical record generated at the Veterans Administration ("VA") Medical Center; and (5) failing to consider the side effects of his pain medication.

The Commissioner counters that the ALJ properly considered all the record evidence and properly evaluated claimant's subjective complaints when making his RFC determination. In particular, the Commissioner relies upon: (1) a May 25, 2000, Physical Residual Functional Capacity Assessment by Dr. Fairley (Tr. at 233-41), a nonexamining source, which states that claimant was disabled after his March 2000 operation, but was reasonably anticipated to regain an RFC for light work, with some limitations on reaching, within twelve months after his surgery; (2) a June, 13, 2000, Initial Outpatient Evaluation by Dr. Glassman (Tr. at 244-45), a treating source, which notes, among other things, positive indications of non-organic back pain, including non-organic pain behavior; (3) claimant's reports of reduced pain, on September 6, 2000, and October 4, 2000, recorded by workers at the VA Medical Center Pain Control Clinic (Tr. at 268, 270), along with a nurse's note (Tr. at 270) that claimant was able to function independently with the basic activities of

daily living; (4) several internal inconsistencies in the October 16, 2000, report of Dr. Publow (Tr. at 280-84), a non-treating source, who opined that claimant appeared to have no work capacity and was at a medical endpoint.[5] The commissioner further argues that neither claimant's activities of daily life nor the objective medical record support his claim to be totally disabled by pain.

The issue before the court is perhaps best framed by the following statements, contained in the briefs of the parties. Claimant correctly states:

> All the physicians, except one, who gave an opinion as to the [claimant's] ability to work stated he was not capable of performing work. The one physician who indicated the plaintiff had the exertional capacity for sedentary work [and who gave his opinion prior to claimant's surgery] did not consider [claimant's] cervical disc disease when he offered that opinion.

---

[5] Dr. Publow wrote a report on his independent medical examination of claimant, seemingly performed for claimant's employer's workers' compensation carrier. While that report was submitted to the Appeals Council but not presented to the ALJ, the Commissioner does not argue that the court cannot consider it, only that any findings that appear favorable to claimant should be discounted, because of various internal inconsistencies in the report.

(Cl.'s Mem. of Law at 17.)  The Commissioner states, equally

correctly:

> Through the time of the ALJ's decision, no evidence had been submitted showing that any of [claimant's] physicians had opined that he had an impairment that was expected to last for 12 months that would preclude his performing a limited range of light work consistent with the ALJ's RFC finding.

(Comm'r's Mem. of Law at 11.)  That both of the foregoing

statements are correct is precisely the problem with the record

on which the ALJ based his decision that claimant was not

disabled.  (See SSR 96-8p, 1996 WL 374184 at *5 ("The adjudicator

must . . . make every reasonable effort to ensure that the file

contains sufficient evidence to assess RFC.").

The record before the ALJ contained: (1) several pre-surgery

prognoses that proved to be overly optimistic;[6] (2) multiple

post-surgery physician statements indicating that claimant was,

---

[6] See, e.g., Tr. at 195 (Dr. Bhatia's December 22, 1999, letter indicating that claimant had been advised to stay away from work for two weeks); Tr. at 229 (Dr. Salerni's February 22, 2000, pre-operative note advising claimant's creditors that claimant was expected to regain a reasonable work capacity approximately one month after his surgery).

15

at the time of examination, disabled;[7] (3) claimant's surgeon's
March 27, 2000, prediction of a six-month recovery period (Tr. at
231); (4) Dr. Fairley's opinion, given less than three months
after claimant's surgery, that claimant was disabled as a result
of the surgery, but would not be disabled for more than twelve
months (Tr. at 240); and (5) Dr. Bhatia's June 6, 2000, opinion
that claimant would be disabled for another six to eight months
(Tr. at 177).  Given claimant's prior history of taking longer to
recover than his physicians had predicted, the May 25, 2000,
prediction by a non-examining physician that claimant would no
longer be disabled on March 3, 2001, is hardly determinative.
See Currier, 612 F.2d at 597 (citation omitted).  Dr. Fairley's
May 25, 2000, prediction is not sufficient to support a July 26,
2001, conclusion that claimant actually recovered from his
uniformly acknowledged post-surgery inability to work.  See id.

---

[7] See, e.g., Tr. at 231 (Dr. Salerni's March 27, 2000,
statement that "[g]iven the severity of the problem [claimant] is
totally disabled."); Tr. at 240 (Dr. Fairley's May 25, 2000,
statement that "[f]rom his surgery in 3/00 the claimant is
considered to be disabled . . ."); Tr. at 245 (Dr. Glassman's
June 13, 2000, statement that "it does not appear likely that the
patient . . . can go back to work at this point").

Dr. Glassman's identification of non-organic pain behavior is also insufficient to support the ALJ's conclusion.  While Dr. Glassman did identify non-organic back pain and non-organic pain behavior, his full clinical impression consisted of:

1.  History of anterior C5-7 cervical discectomy.
2.  Deconditioning.
3.  Non-organic pain behavior.
4.  Chronic neck and back pain.

(Tr. at 245.)  With respect to claimant's pain, Dr. Glassman wrote: "If there is still persisting pain in the neck and the arm over the next month, we will consider doing electrodiagnostic testing for this patient."  (Tr. at 245.)  Plainly, Dr. Glassman identified both non-organic pain behavior and actual pain, and for claimant's actual pain, Dr. Glassman prescribed no fewer than three pain medications: Relafen, Vicodin, and Flexeril. (Tr. at 245.)

With regard to the source of claimant's non-organic pain behavior and the issue of malingering, Dr. Glassman wrote:

> the remainder of the physical exam was notable for the increase in non-organic pain behavior as well as the patient focusing [on] whether or not I would fill out a disability form for him.

17

> . . .
>
> . . . The patient seemed clearly [to be] involved with improving his overall strength and endurance to get better. . . . However, he has 3/5 Waddell's findings which may impact his overall progress while here.

(Tr. at 245.) The first and third sentences quoted above refer to non-organic pain behavior, which may or may not be a sign of malingering, but those sentences are properly interpreted in the context of the second sentence, which tends to discredit malingering as a source of claimant's non-organic pain. Moreover, Dr. Glassman said it appeared unlikely that claimant was able return to work. It is unlikely that he would have reached that conclusion if he thought claimant was not, in fact, disabled. Dr. Glassman's report is more favorable to claimant's position than the Commissioner realized.

The remainder of the evidence relied upon by the Commissioner to support the ALJ's decision is of a similar nature; it is far less supportive of the decision when read in light of "the evidence in the record as a whole." Irlanda Ortiz, 955 F.2d at 769 (citation omitted). For example, the ALJ's conclusion that claimant's "pain or subjective complaints do not

18

significantly impact [his] daily activities" (Tr. at 19) is based entirely on a single comment made by a clinical nurse specialist in the VA Medical Center Pain Control Clinic, in a progress note dated October 4, 2000. The note on which the ALJ relied did not discuss any specific daily activities, but simply stated, in conclusory fashion: "Activity level a little better, he can at least function independently with basic ADL's." (Tr. at 270.) That same progress note indicates, however, that claimant was taking a daily dose of morphine sulphate and was walking with a cane (Tr. at 270), which suggests something more than an insignificant impact on claimant's ability to perform daily activities.

Similarly, the two VA Medical Center Pain Clinic progress notes that the Commissioner points to as demonstrating claimant's decreased pain paint a rather different picture, when considered in their entirety. For example, the September 6, 2000, note reports that claimant had "[i]mproved level of pain control on MSContin 90 . . . 5:10 level which is very acceptable," and that he had "some days w/o use of any BTP med." (Tr. at 268). However, that same note indicates that claimant had a poor

19

appetite, was sleeping poorly, and had a minimal exercise/ activity level. (Tr. at 268.) That note also contains the following observation of claimant:

> 41 yo M, looking pale and very uncomfortable - speech strained
> antalgic gait - limps to L
> sits w/ wt off of L buttocks
> needs to change position freq and stand and stretch

(Tr. at 268-69.) Finally, the note indicates that claimant had been prescribed morphine sulphate for both regular daily use and for breakthrough pain. Thus, the September 6 note documents an improved but still substantial level of pain.

The evidence the ALJ relied upon, when considered in context, and in light of all the other evidence of record, falls short of the quantum necessary to qualify as substantial. See Irlanda Ortiz, 955 F.2d at 769 (noting the court's obligation to consider the entire record); SSR 96-8p, 1996 WL 374184 at *5 (explaining the ALJ's responsibility to develop the record). Because the ALJ's decision was not based upon substantial evidence, it cannot stand, and the matter must be remanded.

On remand, the ALJ should develop a record that focuses on establishing when, if ever, claimant regained the capacity for work. As noted above, all agree that claimant was unable to work after his surgery. But the record contains nothing more compelling regarding claimant's renewed ability to work than Dr. Fairley's May 25, 2000, prediction that he would, at some point prior to March 3, 2001, regain that ability. Given that claimant's surgery took place over three years ago, it should be determinable when, if ever, claimant regained the ability to work. In a similar vein, it would be useful for the ALJ to structure his decision so that it addresses, separately, claimant's pre- and post-operative ability to work. As the court has ruled, the ALJ's decision that claimant regained the ability to work after his surgery is not supported by substantial evidence. His determination of a pre-surgery ability to work is on only slightly firmer ground; it would seem, as a logical matter, that the validity of any pre-surgery conclusion that claimant was capable of work is at least called into serious question by the fact that claimant's impairments did ultimately prove severe enough to warrant surgery. In any event, if, on remand, the ALJ determines that claimant did have the capacity to

21

work prior to his surgery, he should provide a full narrative discussion of the facts supporting that conclusion, which also "explain[s] how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved." SSR 96-8p, 1996 WL 374184 at *7.

## Conclusion

For the reasons given, claimant's motion to reverse and remand (document no. 8) is granted in part and denied in part. To the extent it seeks reversal of the Commissioner's decision denying his application for benefits, the motion is denied. To the extent it seeks remand to the ALJ for further consideration, it is granted. The Commissioner's motion for an order affirming the ALJ's decision (document no. 10) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings. The Clerk of the Court shall enter judgment in accordance with this order and close the case.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

May 12, 2003

cc:  Raymond J. Kelly, Esq.
     David L. Broderick, Esq.