Gerry v. SSA                                    CV-04-063-SM   11/8/04
                    UNITED STATES DISTRICT COURT

                      DISTRICT OF NEW HAMPSHIRE


Patricia K. Gerry,
      Petitioner

      v.                                    Civil No. 04-063-SM
                                            Opinion No. 2004 DNH 158
Jo Anne B. Barnhart, Commissioner,
Social Security Administration,
      Respondent


                          O R D E R


      Pursuant to 42 U.S.C. § 405(g), claimant, Patricia K. Gerry,

moves to reverse the Commissioner's decision denying her

application for Social Security disability insurance benefits

under Title II of the Social Security Act, 42 U.S.C. § 423.  The

Commissioner, in turn, moves for an order affirming her decision.

For the reasons given below, the matter is remanded to the

Administrative Law Judge ("ALJ") for further proceedings

consistent with this opinion.



                      **Standard of Review**

      The applicable standard of review provides, in pertinent

part:

> The [district] court shall have power to enter, upon
> the pleadings and transcript of the record, a judgment
> affirming, modifying, or reversing the decision of the
> Commissioner of Social Security, with or without
> remanding the cause for a rehearing. The findings of
> the Commissioner of Social Security as to any fact, if
> supported by substantial evidence, shall be conclusive
> . . .

42 U.S.C. § 405(g). However, the court "must uphold a denial of social security disability benefits unless 'the [Commissioner] has committed a legal or factual error in evaluating a particular claim.'" Manso-Pizarro v. Sec'y of HHS, 76 F.3d 15, 16 (1st Cir. 1996) (quoting Sullivan v. Hudson, 490 U.S. 877, 885 (1989)).

Regarding the statutory requirement that the Commissioner's findings of fact be supported by substantial evidence, "[t]he substantial evidence test applies not only to findings of basic evidentiary facts, but also to inferences and conclusions drawn from such facts." Alexandrou v. Sullivan, 764 F. Supp. 916, 917-18 (S.D.N.Y. 1991) (citing Levine v. Gardner, 360 F.2d 727, 730 (2d Cir. 1966)). In turn, "[s]ubstantial evidence is 'more than [a] mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Currier v. Sec'y of HEW, 612 F.2d 594, 597 (1st

2

Cir. 1980) (quoting <u>Richardson v. Perales</u>, 402 U.S. 389, 401 (1971)). Finally, when determining whether a decision of the Commissioner is supported by substantial evidence, the court must "review[] the evidence in the record as a whole." <u>Irlanda Ortiz v. Sec'y of HHS</u>, 955 F.2d 765, 769 (1st Cir. 1991) (quoting <u>Rodriguez v. Sec'y of HHS</u>, 647 F.2d 218, 222 (1st Cir. 1981)).[1]

## Background

The parties have submitted a Joint Statement of Material Facts (document no. 7). That statement is part of the court's record, and will be summarized, rather than repeated in full.

On October 8, 2000, claimant awoke with numbness on her right side.[2] Eventually, physicians determined that her numbness was probably caused by demyelinating disease, a condition similar

---

[1] "It is the responsibility of the [Commissioner] to determine issues of credibility and to draw inferences from the record evidence. Indeed, the resolution of conflicts in the evidence is for the [Commissioner], not the courts." <u>Irlanda Ortiz</u>, 955 F.2d at 769 (citations omitted). Moreover, the court "must uphold the [Commissioner's] conclusion, even if the record arguably could justify a different conclusion, so long as it is supported by substantial evidence." <u>Tsarelka v. Sec'y of HHS</u>, 842 F.2d 529, 535 (1st Cir. 1988).

[2] She has not worked since.

3

to multiple sclerosis.[3]  On several occasions, claimant also reported to her treating physicians that she was suffering from fatigue.

Claimant's capacity for work has been evaluated on several occasions.  The record includes: (1) a November 5, 2001, independent neurological examination report by Dr. Eugene A. Lesser;[4] (2) a November 26, 2001, residual functional capacity ("RFC") assessment by Dr. Burton Nault;[5] and (3) three medical

---

[3] The principal difference is that demyelinating disease involves only a single lesion on the spinal cord, while multiple sclerosis involves multiple lesions.

[4] Dr. Lesser concluded:

> Relative to Ms. Gerry's ability to do basic work-related activities, her ability to sit, stand, carry, bend, and lift is unimpaired.  I think it is likely that she could function at a sedentary level, though sensory loss in the right hand may limit her ability to perform some fine motor activity.

(Administrative Transcript ("Tr.") at 144.)

[5] Dr. Nault concluded:

> In summary at this time, the claimant is identified as having a probable early multiple sclerosis syndrome currently with basic residual numbness in the right upper extremity and somewhat in the right leg.  It would appear that this aspect of her multiple sclerosis is not at Listings level impairment and it would appear from the MER provided by her own

4

source statements of ability to do work-related activities by Dr. Gerald Indorf, dated July 5, 2002, July 29, 2002, and October 18, 2002.[6]

> treating sources as well as the current neurological evaluation by Dr. Lesser, that the claimant would retain a functional capacity that would allow her to occasionally lift 20 pounds, more frequently 10 pounds and to be able to stand and ambulate for at least six hours out of an eight-hour workday and to be able to sit for at least six hours out of an eight-hour workday with the ability to do occasional bending, lifting, crouching, and climbing stairs. It would appear that the claimant needs to avoid work requiring fine rapid repetitive manipulation of the right hand and fingers, and avoid lifting over 5 pounds with the right upper extremity. This level of activity is supported by the claimant's own ADL's [activities of daily living] which appear, by history from Dr. Lesser, to have shown definitive improvement since her submitted ADL's of 05/01.
>
> The claimant's allegations of symptoms are credible, however, her symptoms do not support a total disability at this time, according to the objective findings and the claimant's own ADL's.

(Tr. at 151-52).

[6] In the most recent of his statements, Dr. Indorf indicated that claimant: (1) was limited in her ability to lift and carry because she "cannot lift effectively with right upper extremity" (Tr. at 172); (2) was limited to standing and/or walking less than two hours in an eight-hour workday (Tr. at 172); (3) had an unlimited ability to sit (Tr. at 173); (4) was limited in her ability to push and/or pull because she "cannot use right upper extremity effectively" (Tr. at 173); (5) could occasionally balance, kneel, and stoop (Tr. at 173); (6) could never climb, crouch, or crawl (Tr. at 173); (7) had limited abilities in reaching, handling, fingering, and feeling in her right upper

After conducting a hearing at which claimant was unrepresented, the ALJ issued a decision which included the following findings:

> 3.   The medical evidence establishes that the claimant has the following medically determinable severe impairments: demyelinating disease.
>
> . . .
>
> 5.   The claimant retains the residual functional capacity to lift up to 10 pounds and occasionally to lift or carry articles like docket files, ledgers, and small tools, to stand and walk for 2 hours out of an 8 hour workday, and to sit for 6 hours out of an 8 hour workday. She can occasionally stoop, kneel, and balance, but must avoid climbing balancing, and crawling. She must avoid constant, fine, rapid, repetitive motions with her right upper extremity and concentrated exposure to temperature extremes, high humidity, and hazardous machinery. This finding comports with a substantially full range of sedentary exertion work.
>
> . . .
>
> 9.   Despite her medically determinable severe impairments, the claimant retained throughout the period under review the ability to perform other work that exists in significant numbers in the national economy. This finding is made

---

extremity because she "cannot use right hand effectively/strength and sensation both impaired" (Tr. at 174); (8) had unlimited abilities in seeing, hearing, and speaking (Tr. at 174); (9) had limited tolerance for temperature extremes, humidity/wetness, and hazards (Tr. at 175); and (10) had unlimited tolerance for noise, dust, vibration, and fumes (Tr. at 175).

6

> pursuant to the Medical-Vocational Guidelines at
> Rules 201.25-201.26.

(Tr. at 17-18.)  Absent from the ALJ's list of findings is any specific assessment of claimant's credibility.


## Discussion

According to claimant, the Commissioner's decision should be reversed, and the case remanded, because the ALJ failed to: (1) consider her allegations of disabling fatigue; (2) carry the Commissioner's burden of proof at step five of the sequential evaluation process;[7] (3) properly assess her credibility; and (4) properly advise her of her right to counsel and conduct an adequate inquiry into her waiver of counsel.  Respondent disagrees categorically.

To be eligible for disability insurance benefits, a person must: (1) be insured for such benefits; (2) not have reached retirement age; (3) have filed an application; and (4) be under a disability.  42 U.S.C. §§ 423(a)(1)(A)-(D).  The only question in

---

[7] More specifically, claimant asserts that it was incorrect for the ALJ to rely upon the Medical-Vocational Guidelines (also known as "the grid") to make her step five determination.

7

this case is whether the ALJ correctly determined that claimant was not under a disability.

For the purpose of determining eligibility for disability insurance benefits,

> [t]he term "disability" means . . . inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 423(d)(1)(A). Moreover,

> [a]n individual shall be determined to be under a disability only if [her] physical or mental impairment or impairments are of such severity that [she] is not only unable to do [her] previous work but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which [she] lives, or whether a specific job vacancy exists for [her], or whether [she] would be hired if [she] applied for work. For purposes of the preceding sentence (with respect to any individual), "work which exists in the national economy" means work which exists in significant numbers either in the region where such individual lives or in several regions of the country.

42 U.S.C. § 423(d)(2)(A).

8

In order to determine whether a claimant is disabled for the purpose of determining eligibility for disability insurance benefits, an ALJ is required to employ a five-step process. See 20 U.S.C. §§ 404.1520.

> The steps are: 1) if the [claimant] is engaged in substantial gainful work activity, the application is denied; 2) if the [claimant] does not have, or has not had within the relevant time period, a severe impairment or combination of impairments, the application is denied; 3) if the impairment meets the conditions for one of the "listed" impairments in the Social Security regulations, then the application is granted; 4) if the [claimant's] "residual functional capacity" is such that he or she can still perform past relevant work, then the application is denied; 5) if the [claimant], given his or her residual functional capacity, education, work experience, and age, is unable to do any other work, the application is granted.

Seavey v. Barnhard, 276 F.3d 1, 5 (1st Cir. 2001) (citing 20 C.F.R. § 416.920, which outlines the same five-step process as the one prescribed in 20 C.F.R. § 1520).

The claimant bears the burden of proving that she is disabled. See Bowen v. Yuckert, 482 U.S. 137, 146 (1987). She must do so by a preponderance of the evidence. See Mandziej v.

<u>Chater</u>, 944 F. Supp. 121, 129 (D.N.H. 1996) (citing <u>Paone v.</u>

<u>Schweiker</u>, 530 F. Supp. 808, 810-11) (D. Mass. 1982)).  However,

> [o]nce the [claimant] has met his or her burden at Step
> 4 to show that he or she is unable to do past work due
> to the significant limitation, the Commissioner then
> has the burden at Step 5 of coming forward with
> evidence of specific jobs in the national economy that
> the [claimant] can still perform.  <u>Arocho v. Sec'y of</u>
> <u>Health & Human Servs.</u>, 670 F.2d 374, 375 (1st Cir.
> 1982).  If the [claimant's] limitations are exclusively
> exertional, then the Commissioner can meet her burden
> through the use of a chart contained in the Social
> Security regulations.  20 C.F.R. § 416.969; Medical-
> Vocational Guidelines, 20 C.F.R. pt. 404, subpt. P,
> App. 2, tables 1-3 (2001), cited in 20 C.F.R. §
> 416.969; <u>Heckler v. Campbell</u>, 461 U.S. 458 (1983).  "The
> Grid," as it is known, consists of a matrix of the
> [claimant's] exertional capacity, age, education, and
> work experience.  If the facts of the [claimant's]
> situation fit within the Grid's categories, the Grid
> "directs a conclusion as to whether the individual is
> or is not disabled."  20 C.F.R. pt. 404, subpt. P, App.
> 2, § 200.00(a), cited in 20 C.F.R. § 416.969.  However,
> if the claimant has nonexertional limitations (such as
> mental, sensory, or skin impairments, or environmental
> restrictions such as an inability to tolerate dust, <u>id.</u>
> § 200(e)) that restrict his [or her] ability to perform
> jobs he [or she] would otherwise be capable of
> performing, then the Grid is only a "framework to guide
> [the] decision," 20 C.F.R. § 416.969a(d) (2001).  <u>See</u>
> <u>also</u> <u>Pratts v. Chater</u>, 94 F.3d 34, 39 (2d Cir. 1996)
> (discussing use of Grid when applicant has
> nonexertional limitations).

<u>Seavey</u>, 276 F.3d at 5 (parallel citations omitted).  Finally,

> In assessing a disability claim, the [Commissioner]
> considers objective and subjective factors, including:
> (1) objective medical facts; (2) plaintiff's subjective
> claims of pain and disability as supported by the
> testimony of the plaintiff or other witness; and (3)
> the plaintiff's educational background, age, and work
> experience.

Mandziej, 944 F. Supp. at 129 (citing Avery v. Sec'y of HHS, 797

F.2d 19, 23 (1st Cir. 1986); Goodermote v. Sec'y of HHS, 690 F.2d

5, 6 (1st Cir. 1982)).

Claimant contends that the ALJ did not properly consider her

subjective complaints of disabling fatigue and did not properly

assess her credibility in determining, at step five, that she was

not disabled. Respondent disagrees, arguing that claimant was

not entitled to a particularized evaluation of her claim of

disabling fatigue and that the ALJ's credibility determination is

supported by substantial evidence.

According to Social Security Ruling ("SSR") 96-7p, 1996 WL

374185 (S.S.A), "an individual's statement(s) about his or her

symptoms[8] is not in itself enough to establish the existence of a

---

[8] "A symptom is an individual's own description of his or
her physical or mental impairment(s)." SSR 96-7p, 1996 WL
374186, at *2.

11

physical or mental impairment or that the individual is disabled." Id. at *2. When "symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness," id. are alleged, SSR 96-7p prescribes a two-step evaluation process:

> * First, the adjudicator must consider whether there is an underlying medically determinable physical or mental impairment(s) – i.e., an impairment(s) that can be shown by medically acceptable clinical and laboratory diagnostic techniques – that could reasonably be expected to produce the individual's pain or other symptoms. . . . If there is no medically determinable physical or mental impairment(s), or if there is a medically determinable physical or mental impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work activities.
> * Second, once an underlying physical or mental impairment(s) that could reasonably be expected to produce the individual's pain or other symptoms has been shown, the adjudicator must evaluate the intensity, persistence, and limiting effects of the individual's symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work activities. For this purpose, whenever the individual's statements about the intensity, persistence, or functionally limiting effects of pain or other symptoms are not substantiated by objective medical evidence, the adjudicator must make a finding on the credibility of the individual's statements based on a consideration of the entire case record. . . . This requirement for a finding on the credibility of the individual's statements about symptoms and their effects is reflected in 20 CFR 404.1529(c)(4) and 416.929(c)(4).

12

Id. (emphasis added).

Here, it is not evident from the ALJ's decision that she followed the two-step process set out in SSR 96-7p. There is no discussion of whether claimant's diagnosis, demyelinating disease, could reasonably be expected to produce fatigue of the kind Gerry claims to experience.[9] Assuming that the ALJ's decision implies a step-one determination favorable to claimant, the decision lacks a specific finding on claimant's credibility.[10] The ALJ's failure to follow the two-step process established by SSR 96-7p constitutes legal error requiring remand. On remand, the ALJ should follow the process described in SSR-96-7p, and, in light of Dr. Nault's assessment of

---

[9] Respondent argues that no controlling authority mandates a particularized credibility assessment of claimant's complaints of fatigue. The court notes that SSR 96-7p includes fatigue in a non-exclusive list of symptoms subject to the two-step evaluation process. Moreover, to the extent claimant's medical records and her testimony before the ALJ both include several references to fatigue, the ALJ had sufficient notice of the need to conduct the requisite analysis.

[10] In her memorandum of law, the Commissioner argues as if the ALJ did make a credibility determination, and while it might be inferred from the decision that the ALJ necessarily did not find claimant's assertion of disabling fatigue to be credible, no explicit (or reviewable) finding appears in either the text of the decision or the numbered findings.

13

claimant's credibility,[11] the ALJ should consider the following guidance:

> [I]f the case record includes a finding by a State agency medical or psychological consultant or other program physician or psychologist on the credibility of the individual's statements about limitations or restrictions due to symptoms, the adjudicator at the administrative law judge or Appeals Council level of administrative review must consider and weigh this opinion of a nonexamining source under the applicable rules in 20 CFR 404.1527 and 416.927 and must explain the weight given to the opinion in the decision.

Id. at *8.

Because this case is being remanded, and claimant is now represented by counsel, her argument that the ALJ failed to properly advise her regarding her right to counsel would appear to be moot. Similarly, there is no need for a full analysis of claimant's claim that the ALJ improperly relied upon the Medical-Vocational Guidelines in determining that claimant was not disabled.[12] However, on remand, the ALJ should give due

---

[11] Dr. Nault wrote: "The claimant's allegations of symptoms are credible, however, her symptoms do not support a total disability at this time, according to the objective findings and the claimant's own ADL's." (Tr. at 152.)

[12] According to claimant, use of the Medical Vocational Guidelines was inappropriate because: (1) she was unable to

consideration to two issues raised by claimant: (1) the applicability of Rule 201.26 where, as here, "[t]he transferability of skills is not an issue" (Tr. at 18); and (2) the internal inconsistency in Finding 5 concerning balancing (Tr. at 18).

## Conclusion

For the reasons given, claimant's motion to reverse and remand (document no. 5) is granted in part and denied in part. To the extent it seeks reversal of the Commissioner's decision denying her application for benefits, the motion is denied. To the extent it seeks remand to the ALJ for further consideration, it is granted. The Commissioner's motion for an order affirming the ALJ's decision (document no. 6) is denied.

Pursuant to sentence four of 42 U.S.C. § 405(g), this matter is remanded to the ALJ for further proceedings. The clerk of the

---

perform a full or nearly full range of sedentary work due to limitations in her ability to use her right upper extremity; (2) grid rule 201.26 does not apply to persons such as claimant, who lack transferrable skills; and (3) grid rule 201.25 does not apply to persons who must avoid all balancing.

15

court shall enter judgment in accordance with this order and close the case.

        **SO ORDERED.**

                                      _____
                                      Steven J. McAuliffe
                                      Chief Judge

November 8, 2004

cc:  David L. Broderick, Esq.
     Raymond J. Kelly, Esq.

16